(37 South. 594.)

No. 15,208.

LEE v. FOLEY.*

(May 9, 1904. On the Merits, Nov. 21, 1904.)

APPEAL—MOTION — COLLISION ON HIGHWAY — RULE OF THE ROAD—CONTRIBUTORY NEGLIGENCE.

Motion to Dismiss.

1. A party cast in action is not required to declare in his motion applying for an appeal that he is aggrieved by the judgment from which he seeks to appeal, nor that there is error therein.

On the Merits.

2. Personal injury is plaintiff's complaint, and damages therefor is his demand.

3. Custom requires that persons driving drays, floats, or other vehicles should bear or pass to the right, unless circumstances are such as require one to keep to the left.

4. The fact that one is pulling a truck loaded with cotton in violation of this custom gives to another no right to neglect the required precaution. If the latter fails in this, he becomes liable, unless the former was equally at fault.

5. Plaintiff contributed to the accident as much as did defendant. Both parties were negligent, and each "party directly" caused the accident.

6. By the exercise of reasonable care the plaintiff could have avoided the accident.

(Syllabus by the Court.)

---

*Rehearing denied December 19, 1904.

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by John Lee against John Foley. Judgment for defendant, and plaintiff appeals. On subsequent death of appellant, his widow was duly substituted. Affirmed.

Benjamin Rice Forman, for appellant. McCloskey & Benedict and John Joseph McCloskey, for appellee.

On Motion to Dismiss.

NICHOLLS, J. The plaintiff brought this action to recover a judgment against defendant for damages for personal injury alleged to have been received by himself through the negligence of one of his (defendant's) employés. Being cast in the action, he applied for and obtained an appeal. Defendant asks its dismissal on the ground that in his motion for the appeal he did not allege that there was error in the judgment, or that he had been in any way or manner aggrieved by it, and he was therefore without any interest to appeal.

Appellee cites Rausch v. Barrere, 109 La. 563, 33 South. 602, and articles 560 and 571 of the Code of Practice in support of the correctness of that proposition.

The appeal in Rausch v. Barrere was not dismissed. The case was decided upon its merits. The language which was used therein in the opinion of this court referred to the action of the district court itself as to granting or not the appeal prayed for, and not to the allegations to be made in the motion.

We know of no law requiring parties to actions applying for an appeal to declare in the motion that there was error in the judgment, or that they were aggrieved by it. The very fact of asking for an appeal evidences the fact that they consider themselves aggrieved, whether there was or was not error in the judgment. It is the very object of the appeal itself. Article 571 of

the Code of Practice deals with third parties who prima facie have no concern with the judgment. Perhaps a person seeking to appeal from a judgment apparently in his favor, or one confessed by himself, would state that he was aggrieved; but that is not the situation in this case. Article 897 of the Code of Practice authorizes an assignment of errors to be made by the appellant within 10 days after the record is brought up, and this assignment is only required in practice in exceptional cases. Article 558 of the Code declares that the party who believes himself aggrieved by the judgment against him may pray for an appeal. It does not require him to declare the existence of such a belief on his part. We have on numerous occasions announced our reluctance to dismissing appeals in limine, and before knowing what issues may be raised between the parties by the record. We think the motion to dismiss is without merit, and it is hereby refused, and the appeal is maintained. See, on this subject, Mestier & Co. v. Chevalier Paving Co., 108 La. 563, 32 South. 520.

## On the Merits.

BREAUX, J. The late John Lee sued John J. Foley for $10,665; also for every working day he was prevented from working by the accident which caused the injury of which he complained.

On the 28th of April, 1903, while he was on a public way in the city of New Orleans, trucking cotton to a ship near by, James Leroy, driver for John J. Foley, drove a heavy float, which struck plaintiff's truck while plaintiff was pulling it, loaded with a bale of cotton, to the ship in the river, at a short distance.

Plaintiff charges that defendant's driver drove his float carelessly and negligently at a furious and dangerous rate of speed, and knocked him over violently, bruised and strained his limbs, and injured him internally; that he suffered great pain, and has been unable to work from the date of the accident to the date of the trial.

He testified as a witness:

"This arm went into the wheel—in the hub—with the truck."

The following was propounded to plaintiff on cross-examination:

"Q. Was it the bale of cotton struck the hub? "A. No, my arm went in the hub first. This arm, truck, and all went in."

The witness referred to the right-hand rear hub of the wagon coming down the street. On the other hand, plaintiff's helper at trucking cotton testified that the bale of cotton being trucked by them, lying across the truck, was the first thing that struck the float. We insert the above excerpt here, for it has bearing upon the issues.

Defendant said, in answer to the complaint of plaintiff, that plaintiff was not injured, and that, if plaintiff was injured, it was by his own fault and negligence, for which respondent is not liable.

The judge of the district court held:

"Plaintiff sued defendant for $10,665 for bodily injuries and loss of time. The accident is proved, but the testimony shows that plaintiff was negligent, and that he contributed towards the accident. He cannot, therefore, recover."

From this judgment plaintiff prosecutes this appeal.

Before this court counsel for plaintiff and appellant alleged that his client departed this life since the appeal, and he moved to have the late plaintiff's widow made a party to the appeal. The motion was granted.

Plaintiff and appellant died about 11 months after the accident in question.

Plaintiff, at the time of the accident, was going in an opposite direction from where the float with which he collided was coming. Plaintiff was in front of his truck, between its handles or shafts, pulling, while Ingham, the helper of plaintiff, was pushing the truck from the rear of the truck. He had one of his hands on the bale of cotton in the truck,

pushing. The cotton was crosswise on the truck, instead of lengthwise. The accident occurred during the high water of 1903. Some portions of the wharf were under water. Two boards were laid in the street on the river side of the street and a temporary plank walk, called a "run," was made, on which longshoremen hauled cotton to the ship. This walk was about 100 feet in length and about 3 feet in width. It was on the left side of the street. It was placed there a short time prior to the accident, to be taken away after the trucking of the cotton.

Trucking cotton was plaintiff's work at the time of the accident.

Whether the planks were laid on the ground in order to have the truck run smoothly over a stony street or to avoid the high water of the river is not made very clear by the testimony, as it is conflicting upon the subject. We infer, however, that this "run" was made to make the hauling on the street paved with stone smoother and easier hauling.

The testimony clearly enough sets forth that there was a wharf covering the space between the river and a small strip of land along the street, then a street of the usual width, on which this "run" on the left side of the street was laid down, consisting of two wide planks laid one near the other.

Wagons and floats passed to and fro on this street, and cotton was sometimes trucked, as in this instance, on the side of the street on a "run." The truckmen were walking slowly, and the float, hauled by three mules, was moving in a walk.

Ingham hallooed to the driver of the float a few moments prior to the collision, when the truck and float were at a small distance one from the other.

A physician who examined plaintiff said at one time in testifying that from all indications the ailment of plaintiff was of traumatic origin. In another part of his testimony the physician was not certain whether the illness of plaintiff was due to the accident or to other causes. The foregoing is our statement of facts.

It is well settled that the whole street from side to side and end to end is for the use of the public, subject to such rules and regulations as laws have laid down or custom requires.

There is no law of the road in Louisiana, as there is in some of the other states of the Union. It is custom which governs, of which courts can take judicial notice, for vehicles to drive to the right of the road. In the case here the float was on the right when the collision occurred. There was room enough for the float to avoid the truck, and, if the driver of the float heard the hallooing of Ingham (plaintiff's helper), and he none the less deliberately ran into the truck, he was greatly at fault, and liable.

There were other wagons on the street. It was not made to appear with reasonable certainty by plaintiff that defendant heard the intended warning of Ingham. In any case the hallooing should have been as much a warning to the truckman as to the floatman. The act of passing the truck does not suggest that all the negligence was on the part of the driver of the float.

A pedestrian or light vehicle should give way, where it is possible, on the public road or street, to floats and wagons. Elliott on Roads and Streets, p. 908.

If, for convenience, something in the nature of an obstruction is placed in the street or public way, it should be used so as, when possible, to give the right of way to the wagons and floats that are not easily turned, or cannot be easily made to leave the straight line they are following. The commentator referred to above adds that the float or wagon ought to be stopped, if due care requires, while the lighter vehicle passes it.

Coming down the street as he was, it does not appear to us that the driver of the float

was alone at fault if he thought that the plaintiff truckman would step slightly to one side, and plaintiff failed to give way at all.

Plaintiff's account of the accident is contradicted by his own helper, Ingham, who is referred to by plaintiff's counsel as a "white man and a very intelligent longshoreman."

Plaintiff insists that he met the resisting hub of the wagon; that the impact was against him and the handle of the truck he held; while the other witness testified that the cotton on the truck was the first to receive the blow of the hub. If plaintiff's account be correct, he has no case, for he should have controlled the handle of his truck so as to avoid the protruding hub from the wagon. It will be borne in mind that it was one of the rear hubs of the wagon.

If the witness' account (Ingham's) be correct, the bearing of his testimony is weakened by the fact that the truck was loaded with one bale of cotton; only it was laid across the truck, instead of lengthways, and thereby adding to the danger of collision with a wagon. The cotton should have been put on the truck so as to take up less space than when laid crossways.

Moreover, in either case there was negligence on the part of plaintiff in pulling his truck as he did, with his face down, as he says, instead of up, as required in order to guard against possible obstruction.

If, owing to this indifference, he failed to do what he should have done to avoid a collision, he cannot recover.

It appears to us that both parties were not sufficiently careful. The floatmen and the truckman seem to have been equally indifferent.

To a reasonable extent the pedestrian pulling a light vehicle should get out of the way. This is also the duty, as far as possible, of the heavier vehicle. If both are equally at fault, it would be difficult to find for one against the other.

There were three mules hitched to the wagon. They were walking, and had passed the truckman. A part of the wagon also had passed him. It was then that the accident occurred. Should not the truckman have turned the handle of his truck to avoid the rear hub? We think he should have done it, and, if the driver of the float erred in not looking after his mules and front part of the float had passed plaintiff, it does not relieve plaintiff from the charge of negligence.

Moreover, it does seem that it was not prudent to load the cotton as it was; that is, viewing the issues on the theory that plaintiff has not given a correct account, and that his helper (a rather peculiar condition of affairs) has given the court the correct account. Had it been loaded lengthwise, as we infer should have been done, there would have been no accident.

We would be loath to pronounce a judgment on this theory, and on the testimony of Ingham; for plaintiff must be held, under the circumstances, to have known the facts of his own case. From that point of view there is no ground for judgment for plaintiff. He should not have neglected to exert himself to a reasonable extent to avoid the accident. Going upon the street with his head down, and not noticing the passing mules and part of the wagon, which had also passed him, is not the conduct of one who seeks to protect himself from accidents.

There is a question raised as to whether plaintiff came to his death by the effect of injuries received. The physician is not by any means certain. He did not trace death to the injury. He did not testify as if convinced that other causes had not supervened to occasion death. We will not go further than to thus mention the fact as we have, for it appears to us that defendant cannot be held for damages.

For reasons assigned, the judgment is affirmed.