## TULSA ICE CO. v. WILKES.

No. 5830. Opinion Filed November 16, 1915.

Rehearing Denied January 11, 1916.

(153 Pac. 1169.)

1. **APPEAL AND ERROR—Case-Made—Notice of Date of Settlement.** Although the case-made fails to show affirmatively that notice had been given of its settlement upon the date the same bears, yet, if it appears from the certificate of the judge that the case-made was presented for settlement and signing "by the parties to said cause," and that amendments were duly suggested, and the case-made duly corrected, etc., the same will be considered.

2. **MUNICIPAL CORPORATIONS—Rule of the Road—"Vehicle."** A bicycle is a vehicle, within the meaning of section 7635, Rev. Laws 1910, which defines the rule of the road as regards the meeting of vehicles thereon.

3. **SAME—Travelers in Vehicles.** Under section 7635, Rev. Laws 1910, it is the duty of travelers in vehicles, when meeting on the public roads or bridges, to each turn to the right of the center of the traveled part of the road; thus each yielding to the other a portion thereof so that they may pass without inconvenience.

4. **SAME.** Where travelers so meet, and one fails to yield a portion of the road, and such failure is the approximate cause of an in-

jury to the other, ordinarily such failure would be actionable negligence; but such failure to turn to the right, thus yielding a portion of the road, is not always actionable negligence. Whether it is such must, in the very nature of things, and the diversity of situations likely to arise, depend upon the circumstances existing at the time of the meeting. In other words, travelers, notwithstanding the rule, are required, in a measure, *to accommodate themselves to the situation presented.*

5. **SAME—Injury to Bicycle Rider—Collision With Wagon—Actionable Negligence.** Plaintiff entered a street and was traveling west on a bicycle, a light, easily controlled vehicle, and saw, two blocks away, an ice wagon drawn by mules approaching him, and being driven slowly in the delivery of ice, along the north side and near the curbing of the street, which was 50 or 60 feet wide and smooth and level its entire width. On approaching the ice wagon he saw a space of three or four feet on the north, to the right of the wagon, and 40 or 50 feet of level street on the south, to the left of the wagon. He chose to undertake to squeeze a passage through the narrow space, rather than to use the wide, level, and unobstructed portion of the street to the left. In doing so he lost his equilibrium and fell against the wagon, which, but for his loss of balance, would not have touched him. **Held,** that plaintiff cannot recover, because he has failed to show actionable negligence upon the part of defendant, and that it was the proximate cause of his injury.

(Syllabus by Brewer, C.) ·

*Error from Superior Court, Tulsa County;*
*M. A. Breckenridge, Judge.*

Action by John H. Wilkes against the Tulsa Ice Company. Judgment for plaintiff, and defendant brings error. Reversed and dismissed.

*Dillard & Blake,* for plaintiff in error.

*Biddison & Campbell,* for defendant in error.

Opinion by BREWER, C. We are met at the threshold of this case with a motion to dismiss the appeal, which we will first proceed to dispose of. The motion sets up two grounds:

(1) It is urged that the notice to settle was served before the time had expired for suggesting amendments,

and that it did not give the five days' notice allowed by the court. It was not objectionable to serve the notice while the time for suggesting amendments was running (*Frey v. McCune,* 49 Okla. 493, 153 Pac. 109), but the court would be without authority to settle the case-made before the time for suggesting amendments had elapsed (*State ex rel. Davis v. Wheeler et al.,* 49 Okla. 357, 152 Pac. 1087); and, had this case been so settled prior to the expiration of the time allowed for suggesting amendments, the point would be well taken. This was not the case, as will appear in discussing the next point.

(2) The second ground is that the notice stated that the case would be presented for settlement on October 13, 1913, and that it shows to have been settled on October 23, 1913, without a showing of the absence or inability of the judge to settle it on the date called for in the notice, or that for any such or other cause the settlement had been postponed. This would likely be fatal also but for the fact that in settling the case the judge certifies:

"The foregoing case-made and the amendments thereto have been duly served in due time, and amendments thereto duly suggested, and the same duly submitted to me for settlement and signing, as required by law, by the parties to said cause; that the same, as above set forth and as corrected by me, is true and correct," etc.

So this case-made stands as settled after the time allowed for suggesting amendments had passed, but without a sufficient notice of the time and place of its presentation to the judge for settlement. But, inasmuch as it appears that it was submitted "by the parties to said cause," and that "amendments thereto [were] duly suggested," and the same, "as corrected by me," is true and

correct, etc., this would, under decisions creating exceptions to the general rule as to notice, dispense with the necessity of notice.

This court, in the case of *First National Bank v. Daniels*, 26 Okla. 383, 108 Pac. 748, after discussing the case of *Ft. Smith & W. Ry. Co. v. State Nat. Bank of Shawnee*, 25 Okla. 128, 105 Pac. 647, and section 233 of Burdick's Work on New Trials and Appeals, in which is stated the general rule as to notice of the time of settling the case-made, notes that there are exceptions to the same, and in the discussion thereof says:

"There are exceptions to the general rule as. stated in the language of the text. *Kansas Farmers' Mutual Fire Ins. Co. v. Amick*, 36 Kan. 99, 12 Pac. 338, illustrates the exception. In that case it was held that, although the record did not affirmatively show that notice had been given of the time when the case would be settled and signed, if it appeared that amendments were suggested by defendant in error all of which had been allowed, defendant could not complain of want of notice; or, if some of the amendments which had been suggested had been disallowed and were immaterial, he could not complain."

After continuing the discussion and citing the holdings of the Kansas courts, Mr. Justice Hayes further says:

"We think that the rule so as to include the exceptions may be stated as follows: A case-made which has been signed and settled without notice to defendant in error of the time and place of signing and settling same will not be considered, unless it appears: First, that defendant has waived such notice or appeared in person or by counsel at the time and place of settling same; second, that defendant suggested amendments all of which were allowed; third, that defendant suggested amendments all of which were allowed, except those that were immaterial. *Christie v. Carter*, 56 Kan. 166, 42 Pac. 708."

We think this case comes within the exceptions noted above, and that the second point of the motion to dismiss is likewise not well taken; and the motion to dismiss the appeal is therefore overruled.

Now, coming to consider the case on its merits, we find that on the 2d day of December, 1911, John H. Wilkes, defendant in error, filed his suit in the district court of Tulsa county against the Tulsa Ice Company, a corporation. For his cause of action he alleged that on or about the 26th day of September, 1911, he was, with due care, traveling westward upon a certain vehicle, to-wit, a bicycle, along Burnett avenue between Owasso and Peoria streets, in the city of Tulsa; that defendant was then and there the proprietor of a certain ice wagon and team of mules which were, in the ordinary course of its business of selling and delivering ice, then and there being driven along said highway by defendant's servants in an easterly direction; that defendant and its servants were negligent, in that they carelessly, negligently, and wantonly, without regard to the safety of the plaintiff, drove said vehicle and mules, upon meeting plaintiff, upon the north side of said highway or road, the same being to the left of traveled part of such highway or road for the defendant, and being to the right of such traveled highway or road for the plaintiff, in such a manner that plaintiff was not able to pass said wagon and mules without interfering, etc.

Plaintiff's case—that is, the question of defendant's liability, if any exists—is to be determined from the evidence given by plaintiff, parts of which follow:

"Q. You may state how it happened. A. Well, I was coming down to my business early in the morning.

Q. Which way were you going? A. Going west, coming down to the city, as I had been accustomed to do for some time, in passing up and down on my bicycle, and I looked down ahead of me for a couple of blocks or more, and I saw the ice wagon coming up, and it was on the north side of the street, and I was coming down on the north side, and I ran on down, and I thought perhaps they would give me a little road, as they kept into the curb pretty close, and I slowed my machine down, and they didn't pay no attention to me, and when I got there I thought to myself I would try and run around them, but my machine was slowed down, and it wasn't rough, and I went to go around them, the machine stopped, and I lost my equilibrium, and I fell over into the wheel. Q. Now, whereabouts on the road was this wagon? A. It was on the north side of the street? Q. How far from the middle, on the north? Describe. A. Well, it was within about three or four feet of the curb, on the north side. Q. Which direction were they going in? A. They were going on east, I should say. Q. You were coming west? A. I was going west. Q. And it was on Burnett street or avenue? A. Yes, sir. Q. Between what two streets? A. Between Peoria and Owasso. Q. Now, was there any particular traveled portion of that cross-street at that time, or was it all equally traveled? A. Well, the travel going east was mostly on the south side of the road, and coming west on the other side. Q. Well, was that a beaten track there? A. Yes, sir. Q. Was the street paved there at that time? A. No, sir. Q. There was then two beaten tracks? A. Yes, sir. Q. In the street? A. Yes; one on the south, and one on the north. Q. And in which one of those beaten tracks were you going? A. I was on the north side. Q. Which one were they on? A. They were on the north side. Q. Same side that you were on? A. Same side coming right up the street. Q. State whether or not, when you approached them, or came up to them, or met them, they turned out of that? A. No; didn't turn out at all; just went right straight ahead. Q. About how close to the curb on the

north side was the wagon at the time you met it? A. Three or four feet; not exactly, about that. Q. What was the condition of the road on the north side of the beaten track, and between there and the curb? A. It was rough. That is what was the trouble. That is what made me lose my equilibrium. I couldn't get through without getting into the rough place. Q. Well, now, you say you turned out to go around? A. Yes, sir. Q. Did you get around them? A. No; I didn't get around them. Q. What happened? A. The wagon run into my head, and hit my shoulders and head, and knocked me to the ground. Q. Now, can you tell the jury how it happened? A. Well, that is about as near as I can tell. As I went over, the wheel struck my head and shoulder, and my hand went under the wheel. Q. Which hand? A. Left hand. Q. Well, did it do any injury? A. Why, yes, sir; left me a stiff hand. * * * Q. Now, how was the road in between those two roadways? A. How was it? Q. What do you mean as to roughness or smoothness? A. Oh, well, it was smooth. Q. It was smooth? A. Yes; my recollection. Q. How far up the road were you when you first saw this wagon turning across the street? A. Two blocks; two blocks; maybe a little more. Q. When you saw it turn across the street? A. No; I didn't see it turn. It was on the north side when I saw it. * * * Q. Now, when you approached the wagon, you saw that it was a rough street on the— A. I did as I went to go around. Q. As you went to go around? A. Yes; when I got right even with the mules. Q. Now, when you saw that wagon was in that position, and you saw that all the balance of the street was vacant to the south of that, room for three or four wagons, and you saw that you were going to run into a little rough place, only two or three feet wide, between there and the curbing, why didn't you go around that way? A. Because it was my side. That was my side. Q. Sir? A. That was my side. Q. That was your side of the road? A. Yes, sir. Q. And because that was your side of the road you were going to run in there if it caused an accident, rather than go around the other way

and prevent an accident; is that the way you felt about it? A. What is the question? (Question read.) A. I never thought of the accident. I never thought of anything only to run around, and I was on that side. Q. Well, you did see that the road was rough in there, and only about two or three feet to pass in? A. I found myself, and when I discovered it— Q. But you could have gone around by the side and avoided the accident? A. Do you think so? Q. I asked you? A. Well, I was not looking at that side of it; that was not my side. Q. That is not the question. You could have gone around to the other side and prevented the accident? A. I could have gone around. that, and could have gone down the other street. * * * Q. Now, what caused you to fall, Mr. Wilkes? A. I lost my equilibrium. Q. Now, the wagon didn't run over you then, but you lost your equilibrium and fell against the wagon; is that true? A. That is it. The wagon was right in my path where I ought to have been driving. Q. And you lost your equilibrium and fell into the wagon? A. That is it, exactly."

The only point for discussion is: Was defendant negligent, and, if so, was it the proximate cause of plaintiff's injury?

Section 7365, Rev. Laws 1910, requires travelers in certain kinds of conveyances "and other vehicles" meeting upon a road or bridge each to pass to the "right of the middle of the traveled part of such bridge or road," to the end that each may pass without interference. This statute but reiterates the general law of the land, usually spoken of as the "law of the road." It came to us from England, except that the English rule required a turning to the left. It has been held that a bicycle is a "'vehicle" within the meaning of the law. *State v. Collins*, 16 R. I. 371, 17 Atl. 131, 3 L. R. A. 394; *Thompson v. Dodge*, 58 Minn. 555, 60 N. W. 545, 28 L. R. A. 608, 49 Am. St. Rep. 533.

The statutory requirement that travelers, when meeting, shall each turn to the right, does not make a non-observance thereof negligence *per se*.   *Lyons v. Childs*, 61 N. H. 72.   For other cases, see Cent. Dig. vol. 25, tit. "Highways," sec. 461.   Ordinarily, if a traveler, on meeting another, fails to yield half of the road by turning to the right, and such failure causes the injury, it would be actionable negligence; but it must depend, in the very nature of things and the diversity of situations likely to arise, upon the circumstances existing at the time of the meeting.   In other words, the travelers, notwithstanding the general rule of law, are required, in a measure, to accommodate themselves to the situation presented.

Therefore it may be generally stated that, while a traveler is ordinarily liable for accidents proximately caused by his failure to keep to the right, yet he may not be liable, even though he drove to the left, if such turning to the left was not the proximate cause of the accident. 37 Cyc. 270.   That one may, under some circumstances, recover, although he turned to the left, has been held in the case of *Cook v. Forgarty*, 103 Iowa, 500, 72 N. W. 677, 39 L. R. A. 488, and that plaintiff cannot recover, although the defendant was on the wrong side of the road, where the injury was the result of plaintiff's own negligence, has been held in *Lee v. Foley*, 113 La. 663, 37 South. 594; 37 Cyc., n. 85, p. 271.

The Supreme Court of Texas had before it a case very similar in its facts to the one at bar.   In that case a horseman met a wagon heavily loaded with hay, and which was approaching him from the west on the extreme north side of the street, and in which the horseman, as the bicyclist did in this case, undertook to go to

the north and right of the wagon, through a narrow space, while on the other side the way was open. In that case (*Landa v. McDermott* [Tex.] 16 S. W. 802) it is said:

"The defendant cannot be charged with negligence arising from a collision or injury resulting from a mistaken judgment of the plaintiff. That he thought he had room to pass on the north or right side of the wagon, when he admits that there was no doubt as to his having room to pass on the left or south side, involved evidently a matter of judgment, which might, on the one hand, in its ultimate results, establish the fact of contributory negligence, or, on the other, the absence of any fault whatever. This risk the plaintiff assumed in the exercise of this judgment, and he cannot fairly escape its consequences. It cannot be denied that the facts show that the plaintiff himself could have avoided the injuries sustained by the exercise of ordinary prudence in passing on the left side of the wagon. This he knew, but he assumed a known risk in attempting to pass on the north side of it, without which the injuries would not have been inflicted. We are of opinion that the facts do not support the finding, and that the judgment should be reversed. *   *   * "

In *Payne v. Nelson,* 16 Ky. Law Rep. 239, the fact that a horseman, when meeting a vehicle, turned to the left, in place of to the right, was held to be not such negligence upon his part as to prevent him from recovering for an injury resulting from the negligence of the driver of the vehicle.

In *Parker v. Adams,* 12 Metc. (53 Mass.) 415, 46 Am. Dec. 694, a case where there was a collision of carriages passing on a public road, it was held that the action could not be maintained by one of the parties, who

was guilty of negligence at the time of the collision, although the other party was on the wrong side of the road.

In *Spofford v. Harlow,* 3 Allen, (85 Mass.) 176, where the driver of a team on the left side of a street, in technical violation of the law of the road, was allowed to recover for an injury sustained from a collision with another team, the driver of which, in meeting him, carelessly and recklessly ran against him.

In *Brember v. Jones,* 67 N. H. 374, 30 Atl. 411, 26 L. R. A. 408, the court, having before it a statute apparently the same as our own, held substantially that in an action for a collision on a highway, where it appeared that there was sufficient room for both to pass, and that the collision could have been avoided if plaintiff had exercised due care, he could not recover, notwithstanding the fact that defendant did not turn to the right.

In *Simmonson v. Stellenmerf,* 1 Ed. Sel. Cas. (N. Y.) 194, it was held that, notwithstanding the fact that travelers, when meeting, should turn to the right side of the center of the road when passing, a violation of the rule did not necessarily subject the traveler to damages arising from a collision so as to deny him the defense that the accident was really caused by plaintiff's own negligence.

So, taking the law as it may be gathered from the foregoing authorities, it is only necessary to apply the principles therein found to the facts disclosed in this case. Summing up these facts, we have here a case where the plaintiff, traveling west on a bicycle, a light, easily controlled vehicle, entered a street and saw, two blocks away, an ice wagon, drawn by mules, approaching him and being slowly driven near the curb on the north side of the street, which was 50 or 60 feet wide, and rea-

sonably smooth and level its entire width. Plaintiff, upon his approach, saw three or four feet of space on the north, to the right of the wagon, and 40 or 50 feet of level street on the south, to the left of the wagon, and chose to undertake to squeeze a passage through the narrow space, rather than to use the wide, level and unobstructed portion of the street to his left. In doing so he lost his equilibrium and fell against the wagon, which otherwise would not have touched him. He justifies his conduct and founds his claim for damages on the laconic answer to a question: "Because it was my side." He stickles for the letter of the law, and forgets its spirit; he invokes the doctrine of the "pound of flesh," and echoes the answer of the famous (?) money lender: "Is it not written in the bond?" So we hold that, under the facts of this case, as shown, the plaintiff was the sole author of his own misfortunes, and has wholly failed to show wherein any failure of duty upon the part of defendant entered therein, as an efficient, moving cause.

The cause should be reversed and dismissed.

By the Court: It is so ordered.