No. 12,110.

Crosby v. Canino, et al.

Decided June 11, 1928. Rehearing denied July 2, 1928.

226

Mr. Donald F. Clifford, Mr. Joseph J. Walsh, for plaintiff in error.

Mr. E. V. Holland, for defendants in error.

*Department Two.*

Mr. Justice Butler delivered the opinion of the court.

VILLA Crosby sued T. Canino and Walter G. Lett for damages for injuries sustained in an automobile accident. The court granted the defendants' motion for a nonsuit, holding that the plaintiff was guilty of contributory negligence.

The parties join in requesting that a final decision be rendered on the application for a supersedeas.

As on motion for a nonsuit, so in the present proceeding, the evidence is to be viewed in the light most favorable to the plaintiff, and the plaintiff is entitled to the benefit of all inferences in her favor that may reasonably be drawn from the evidence.

On April 20, 1926, the plaintiff was a passenger on a street car going south on Broadway in Denver. The car stopped at the customary stopping place at the northwest corner of Broadway and Iliff street. The plaintiff alighted. She testified that when she alighted, she noticed three or four automobiles standing in single file; that they had come to a stop when the street car stopped; that they were "right in front of the car, where the car stopped, just right out in front"; that she stepped out between the car and these automobiles; that the automobiles were standing along the side of the street car, up to the curbing. The plaintiff stood there "a second" until the street car started. Another witness said that as the street car moved on, one of the automobiles went forward, and another was slow in starting. The plaintiff started to cross Broadway to the east (the left). When she reached a point between the two street car tracks at that place, a north bound street car, which had not stopped at the crossing, approached. The plaintiff "stepped back a step" so that it would not hit her, and at that moment she was "hit from behind" by an automobile delivery truck owned by the defendant Canino and driven by his employee, the defendant Letts. The plaintiff was knocked down and severely injured. Letts had been driving south on the right hand side of the road. He approached from the rear of the automobiles that had

stopped in single file near the right curb awaiting the starting of the street car from which the plaintiff alighted. According to one witness, when the truck reached the rear of the automobile line, one of the automobiles started forward and another, which must have been the rear one, "was kind of slow in starting, and he [Letts] swung around it. * * * he turned out to the left of them." When the truck struck the plaintiff it "was coming right straight up alongside the other car," and was about 35 feet from the street intersection. A witness who was in one of the automobiles in the line says that she saw the plaintiff alight from the street car and stand "as anyone would * * * after alighting from a street car"; that the automobile the witness was in started, and passed the plaintiff, and that there was plenty of room to pass her. The plaintiff testified that when she was walking east she did not see any automobile coming from the north, and that she was in "full view—in plain view of everything." A witness who was driving a coal truck on Iliff street said that the automobiles—two or three—standing along the side of the street car were not between the plaintiff and the curb, but "back off [of] the door from the street car"; that they "had not passed the outlet of the street car"; that there was nothing between the plaintiff and the curb when she got off the street car. As he was going east on Iliff street, presumably on the right side of the street, he was some distance from the automobiles and saw them from in front, not from the side. His opportunity to see their exact position, therefore, was not so good as plaintiff's; and in any event, on motion for a directed verdict, and in this proceeding, the evidence is to be viewed in the light most favorable to the plaintiff. While the plaintiff was making her case, the defendant introduced in evidence, without objection, section 1980 of the Denver Municipal Code of 1917, providing that, "Pedestrians * * * when alighting from street cars, must not stand in the street, but shall proceed immediately to the sidewalk to

the right." The plaintiff introduced in evidence section 1971 of the same Code, providing that, "Every person operating a vehicle on the streets shall drive the same in a careful and prudent manner, * * * so as not to endanger the life or limb * * * of any person." She also introduced in evidence Rule 7 of "Rules for the Regulation of Street Traffic," issued by the manager of safety and excise of the City and County of Denver. It is as follows: "Single File at Street Intersections. A driver of any vehicle must not attempt to pass another vehicle or street car at a street intersection."

1. The defendants contend that, in not proceeding immediately to the sidewalk to the right, upon alighting from the street car, the plaintiff was guilty of contributory negligence, and that for this reason she is not entitled to recover. We have held that a failure to obey an ordinance passed for the protection of the public is negligence per se. *Denver, etc., R. R. Co. v. Ryan,* 17 Colo. 98, 28 Pac. 79; *Hedges v. Mitchell,* 69 Colo. 285, 194 Pac. 620. But this is not an inflexible rule, applicable to every conceivable situation. In some circumstances, it might be negligence, even gross negligence, for a passenger, upon alighting from a street car, to "proceed immediately to the sidewalk to the right," as the ordinance (sec. 1980) provides; for example, if automobiles between the street car and the sidewalk to the right are moving forward, and others are rapidly approaching; or if a runaway horse is approaching the space. Or, for other reasons, a compliance with the ordinance might be impracticable, or even impossible; for example, if there is a deep excavation in the space; or if street repairers are laying hot asphalt; or if the space is occupied by automobiles or other vehicles. Traffic ordinances are to be given a reasonable construction. They should not be so construed as to require a person to do the impossible, or to take a dangerous course when an apparently safe course is open. Thus, where an ordinance requires a vehicle to be driven on the right hand side of the street,

one is not per se negligent who drives to the left when the right hand side is dangerously out of repair. In such case, whether he is negligent or not depends upon whether or not he exercises due care in the circumstances. So, notwithstanding the existence of an ordinance requiring a vehicle meeting another to pass to the right, a person is not negligent per se if he turns his vehicle to the left, and thus passes a vehicle approaching him on the wrong side of the road in such manner as to make it impossible or impracticable to pass to the right. If, in turning to the left, he acts as a person of ordinary care and prudence would act in the circumstance, he is not guilty of negligence; otherwise, he is. The matter is thus discussed in Blashfield's Cyclo. of Automobile Law, page 1159:

"The law of the road, embodied in statute or ordinance, says that vehicles meeting on opposite courses shall each keep to the right of the road. The right of the road may, however, be impassible because undergoing repairs or because of climatic conditions. To say that a driver who, under such circumstances, turns to the left, violates the regulation is not a proper conception of the quality of the act in question. Under such circumstances the regulation invoked has no application. So, in a case where two vehicles meet on the same side of the street and the one on its proper side—that is, the right side—turns to the left to avoid what appears to be an inevitable collision, there is not only the physical presence of the other car barring continuance on the right side of the road, but there is the additional consideration that, if the car on the right side should continue its original course and direction, it will probably bring about the very result which the regulation is designed to prevent. In such case the majority of the courts hold that turning to the left by the vehicle which was originally on the right side of the road constitutes a mere technical violation of the regulation, and cannot be deemed negligence."

In the present case, it was for the jury to say whether or not the plaintiff acted with due care in not proceeding to the sidewalk to the right. According to her testimony, automobiles were between the street car and the curb. The plaintiff stood there "a second"; and an occupant of one of the automobiles said that the automobile passed the plaintiff, who was standing "as anyone would * * * after alighting from a street car." Another of the automobiles was slow in starting. The ordinance forbids those who alight from street cars to "stand in the street." This provision, and the requirement that such persons shall proceed "immediately," are just as important as the requirement that they shall "proceed * * * to the sidewalk to the right." Under the evidence, if the case had been submitted to the jury, the jury might have found that the way to the right was blocked or made dangerous by automobiles, one in motion and another trying to start; and that, in proceeding to the left instead of to the right, the plaintiff exercised due care. It must be borne in mind that the plaintiff had no reason to anticipate the coming of any vehicle in the space to the left as far as the east car track, and that when she was in that space, she was hit from behind by a truck driven there in violation of a traffic regulation. Rule 7, supra.

In *Tulsa Ice Co. v. Wilkes,* 54 Okl. 519, 153 Pac. 1169, plaintiff was riding a bicycle. He met an ice wagon. The statute required vehicles meeting to pass each other to the right. The space to the right of the ice wagon was 3 or 4 feet; that to the left, 40 or 50 feet. The plaintiff "chose to undertake to squeeze a passage through the narrow space, rather than to use the wide, level, and unobstructed portion of the street to the left." In doing so, he lost his equilibrium and fell against the wagon. The court held that the plaintiff "was the sole author of his own misfortunes," and reversed the case with direction to dismiss. The opinion quotes as applicable, the following from *Landa v. McDermott* (Tex.) 16 S. W. 802,

in which no statute or ordinance, but the common law of the road, was involved:

"The defendant cannot be charged with negligence arising from a collision or injury resulting from a mistaken judgment of the plaintiff. That he thought he had room to pass on the north or right side of the wagon, when he admits that there was no doubt as to his having room to pass on the left or south side, involved evidently a matter of judgment, which might on the one hand, in its ultimate results, establish the fact of contributory negligence, or, on the other, the absence of any fault whatever. This risk the plaintiff assumed in the exercise of this judgment, and he cannot fairly escape its consequences. It cannot be denied that the facts show that the plaintiff himself could have avoided the injuries sustained by the exercise of ordinary prudence in passing on the left side of the wagon. This he knew, but he assumed a known risk in attempting to pass on the north side of it, without which the injuries would not have been inflicted."

Under the facts disclosed by the record in the present case, if the plaintiff, instead of going to the left, where at that time the way was unobstructed and apparently safe, had attempted to "proceed immediately to the sidewalk to the right," and had been injured, it is not unlikely that she would be held, as a matter of law, to have been negligent.

It was error to hold that, as a matter of law, the plaintiff was negligent in not proceeding to the sidewalk to the right.

2. The trial court, stating that the plaintiff went ahead like a blind person, without looking to the right or left to see if she was in a place of safety, held that in this respect also she was guilty of negligence per se. But a traffic regulation (Rule 7, supra) forbids a driver of a vehicle to "attempt to pass another vehicle or street car at a street intersection." The plaintiff had a right to assume, in the absence of reasonable grounds to think

otherwise, that others would perform their duty and obey that traffic regulation. In the absence of reasonable grounds to think otherwise, the plaintiff had a right to assume that she would not be exposed to danger by reason of a violation by another person of such traffic regulation. When she alighted, the plaintiff did look and saw several automobiles in single file on the right hand side, as in the circumstances they should be. She started to cross the street. She reasonably might expect a street car to approach from the south on the east track, and automobiles or other vehicles to approach from the south between that track and the east curb; but there is no evidence tending to show that she had any reason to expect that one of the automobiles going south on the right hand side of the road and approaching the street intersection in single file, would suddenly swing out of the line and attempt to pass the others, in violation of a traffic regulation. There is no evidence that a horn was sounded, or that any other warning was given, though at all times the plaintiff was within plain view of the defendant Letts.

It was error for the trial court to hold that the plaintiff was negligent, as a matter of law, in attempting to cross the street. *Mickelson v. Fischer,* 81 Wash. 423; *Cool v. Petersen,* 189 Mo. App. 717; *Harris v. Johnson,* 174 Cal. 55; *Posener v. Long* (Tex. Civ. App.) 156 S. W. 591.

3. For the same reasons, it was error for the trial court to hold that, in stepping back one step to avoid contact with the north bound street car, the plaintiff was guilty of negligence, as a matter of law. That question should have been submitted to the jury.

The judgment is reversed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.