468

## No. 15,909.

STAHL *v.* COOPER.
(190 P. [2d] 891)

Decided January 12, 1948.   Rehearing denied March 1, 1948.

Messrs. WOLVINGTON & WORMWOOD, Mr. DONALD F. CLIFFORD, for plaintiff in error.

Mr. HAROLD B. WAGNER, Mr. CARL A. WYERS, for defendant ·in error.

MR. JUSTICE STONE delivered the opinion of the court.

THE parties appeared in reverse order in the trial court, and we will refer to them as there appearing. Plaintiff and his wife, Rita C. Cooper, while walking north along the east side of Franklin street in the city of Denver, and crossing Sixth avenue, shortly after noon on a clear day, were struck by a panel delivery truck being driven west on Sixth avenue by defendant's agent. The driver of the truck did not testify. Neither plaintiff nor his wife was aware of the approach of the truck nor knew the cause of the accident, and there was no other eyewitness. Plaintiff and his wife each testified that they were crossing the highway within a crosswalk at the end of the block which is an unregulated intersection. This is corroborated by the surrounding circumstances and there is no substantial contradiction. There was evidence of tire marks, distance traveled by the truck after the accident, damage to the truck and injury to plaintiff and his wife, sufficient to support a finding of excessive speed, defective brakes, or careless driving of defendant's truck. Sixth avenue is approximately forty-two feet wide from curb to curb and carries two parallel streetcar tracks. Plaintiff and his wife each testified that when they reached the south curb they looked carefully in both directions and saw no approaching traffic, that the pavement was uneven and required care in walking upon it; that they had crossed this street many times; that after stepping off the south curb neither of them again looked either to the right or to the left, and that they had crossed both street car tracks and were about halfway between the last rail and the curb when the accident occurred. Defendant here seeks reversal of an unfavorable judgment.

We have considered and disposed of the first two grounds urged for reversal in our opinion in *Stahl v. Rita C. Cooper*, 117 Colo. 445, 188 P. (2d) 894, which grew out of the same accident and was based on equivalent testimony.

It is urged in the present case that the court

further erred in receiving in evidence a statement said to have been made by the driver of defendant's truck subsequent to the accident. A police officer who was called to the scene of the accident and assisted in placing plaintiff and Mrs. Cooper in the ambulance for their removal to the hospital, testified that some ten minutes thereafter he interrogated the driver of defendant's truck, who was standing at the intersection corner, as to the accident, and this officer was permitted, over objection, to testify as to their conversation which was in substance that the driver stated that the pedestrians started to go one way and then another, and then they ran in the path of the truck and he hit them, and that he didn't know which direction they were walking previous to the accident.

Since the driver was not a defendant and had not been called as a witness, such statement was admissible, if at all, only as part of the res gestae. "Res gestae are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that thus speaks." *Graves v. People,* 18 Colo. 170, 32 Pac. 63. Such a statement, if part of the res gestae, must be in the nature of an exclamation, rather than an explanation; it must be spontaneous and instinctive rather than deliberate. While the tendency is to broaden, rather than to restrict, the rule (*Heg v. Mullen,* 115 Wash. 252, 197 Pac. 51), and the determination as to admissibility in great measure rests in the discretion of the trial judge (*Maynard v. Hall,* 61 Ariz. 32, 143 P. (2d) 884), still we might be seriously concerned with the challenge here made if the evidence so elicited had proven prejudicial to defendant. No prejudice therein is demonstrated in defendant's brief and none is apparent to us. Harmless error is not ground for reversal.

■ It is further urged that the court, over objection, improperly instructed the jury with respect to the Denver traffic ordinances and the applicability of such ordinances, and in refusing properly to instruct the jury as to the pedestrian's duty in crossing the street.

In one instruction the court quoted the applicable provisions of the city ordinances entitled "Pedestrians' Right of Way," "Lights and Brakes," "Reckless Driving," and "Careless Driving and Speeding." The portion of the instruction referring to pedestrians' right of way is as follows:

"The operator of any vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at intersections where the movement of traffic is being regulated by police officers or traffic control signals or at any point where a pedestrian tunnel or overhead crossing has been provided.

\* \* \*

"It shall be unlawful for a pedestrian to cross a roadway at any point other than within a marked or unmarked crosswalk, on any street designated as a Thru Street, or on any street where the parking of motor vehicles is limited to one or two hours, as herein provided by this Ordinance. On other roadways within the City and County of Denver, a pedestrian crossing such roadway at any other point than within a marked or unmarked crosswalk, shall yield the right-of-way to vehicles upon the roadway provided that this provision shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of pedestrians."

Following that instruction, the court gave a general instruction, Number 10, applicable to each of said ordinance provisions, to wit: "The court further instructs the jury that whenever the violation of a city ordinance proximately causes injury, such violation is termed negligence per se, that is to say negligence in and of itself and you are instructed that if you find that the injuries

of the plaintiff and of his wife, Rita C. Cooper, were brought about as the direct and proximate result of the violation by the defendant's employee of any of the provisions of the foregoing ordinances of the City and County of Denver, *such violation renders the defendant liable to the plaintiff*." Emphasis supplied.

This instruction in itself is objectionable in that under it, in case the jury found that plaintiff's injury was the proximate result of the violation of an ordinance, "such violation renders the defendant liable to the plaintiff," even though plaintiff may have been guilty of concurrent contributory negligence, in which event defendant would not be liable. Injuries may be the result of several concurring proximate causes (*Louisville & N.R. Co. v. Maddox*, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318; *Rider v. Syracuse R.T. Co.*, 171 N.Y. 139, 63 N.E. 836; Prof. Joseph H. Beale, 33 Har. L. Rev. 633 at 639), and if an act of plaintiff is one of them, he can have no recovery. Under the rule that the instructions should be read together, it may be urged that it was cured by the subsequent instructions, in common form, as to contributory negligence and the law when both parties are at fault; but the positive declaration in the former instruction predicating absolute liability upon violation of an ordinance proximately causing injury is inconsistent with and contradictory of the subsequent instructions as to contributory negligence and fault of both parties, and likely to confuse the jury as to which should be followed. The quoted instruction, therefore, should have qualified liability by exception in case of contributory negligence.

Following the instruction above quoted is a definition of sidewalks and crosswalks; then the following instruction, Number 12: "Reasonably construed, Section 15 (a) of the Denver ordinance, giving a pedestrian the right of way means that when people are crossing a street at an intersection to which the provisions of the ordinances are applicable, and a motor truck is approaching the

crossing at a speed and on a course such that either the pedestrian or the truck must alter speed or direction to avoid a collision, the driver of the truck must act so as to avoid running down the pedestrians and his failure to do so is a violation of the ordinances and constitutes negligence." It will be noted as to this instruction, given after the general instruction regarding all the ordinances, including that concerning pedestrian's right of way: first, that it singles out the right-of-way ordinance specially as though it were of extraordinary importance; second, that by this instruction if the jury found, as it doubtless did find, that plaintiff pedestrian was crossing within the crosswalk, then it was required to find defendant negligent regardless of the circumstances, for under its mandate "the driver of the truck *must* act so as to avoid running down the pedestrians."

The right of way granted pedestrians by this ordinance does not give such extensive protection as stated in the instruction. We believe the better rule to be that the motorist is not an insurer of a pedestrian's safety, but is required only to use reasonable care in yielding the right of way; that the pedestrian's right is not absolute, but relative. In *McDonald v. Wickstrand*, 206 Wis. 58, 238 N.W. 820, plaintiff pedestrian when at the intersection looked in both directions and did not see any automobiles approaching. He looked again when he reached the center of the street and saw no cars. He did not see defendant's car before it struck him within a few feet of the far curb. The court said: "A pedestrian is not relieved of the duty to exercise ordinary care for his own safety. He cannot act recklessly nor rely entirely upon the fact that he has the right of way, nor unreasonably intrude himself into the midst of traffic. The danger of such proceeding would naturally hold him back, and if carelessly he gets himself into such position the law leaves him remediless. However, the fact that he has the right of way, coupled with a reasonable observation before entering upon the crossing, are circum-

stances to be considered by the jury in determining whether or not his conduct is negligent." The Virginia court said, where a similar statute was involved: "While a pedestrian in crossing streets at intersections has the right of way over motor vehicles, he must exercise such care for his own safety as a person of ordinary prudence would exercise under like circumstances. He cannot blindly or negligently expose himself to danger. But if the hypothetical ordinarily prudent person could from the circumstances reasonably believe that the crossing could be made in safety and that there was no car sufficiently near to put him on notice of approaching danger, he is not required to be continually looking and listening to see if automobiles are approaching, under penalty that upon failure to do so, if injured, his negligence must be conclusively presumed." *Sawyer v. Blankenship*, 160 Va. 651, 169 S.E. 551. And the Iowa court: "If * * * the law recognizes a right of precedence in the use of a crossing, it does not mean that the persons having such right of way may loiter upon or obstruct the crossing to the exclusion of others or to the interruption of street traffic, but rather that, when two or more persons moving in different directions approach a crossing at the same time, or in such manner that, if both or all continue their respective courses, there is danger of collision, then the one having the preference is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so." *Switzer v. Baker*, 178 Ia. 1063, 160 N.W. 372. See, annotation 96 A.L.R. 786 and other cases therein cited; also, 2 Blashfield, Cyclopedia of Automobile Law and Practice, §1272.

We believe that the intersection right-of-way rule between pedestrian and car requires like construction as the similar ordinance provision as to right-of-way between two approaching cars where we have followed the weight of authority in adopting the "relative" rather than the "absolute" construction. See, annotation 136

476

A.L.R. 1497. As to the latter ordinance we have said: "As we understand the right of way rule of the City Code, we believe that it is relative and not exclusive; it certainly does not justify one who is entitled to it in insisting on the right of way when, by the exercise of reasonable judgment and care, he must, or should, know that a collision is likely to occur with resulting personal injury and property damage. One who insists upon the exercise of his right of way under circumstances which would cause a reasonably cautious and prudent person to yield the same is clearly guilty of either negligence or contributory negligence, as the case may be." *Denver Equipment Co. v. Newell*, 115 Colo. 23, 169 P. (2d) 174.

The Washington courts are among those construing violation of a statute or ordinance as constituting negligence per se. Yet they have declared the obligation as between driver and pedestrian not to be an absolute obligation, but as one of reasonable care. "When the accident occurs at street intersections, the pedestrian has the right of way and the burden is on the driver to establish that he used every reasonable care to avoid inflicting the injury." *Elmberg v. Pielow*, 113 Wash. 589, 194 Pac. 549. Under an Oregon statute requiring the driver to yield the right of way to a pedestrian within a crosswalk at the end of a block, the court said, in *Cline v. Bush*, 152 Ore. 63, 52 P. (2d) 652, "The pedestrian, in exercising his right of way at street intersections, must use ordinary care or such care as a reasonably prudent person would use under similar circumstances and conditions commensurate with the danger to be apprehended. The driver of a car at such a crossing must do the same."

Further, the violation of such an ordinance is not always negligence per se. In *Crosby v. Canino*, 84 Colo. 225, 268 Pac. 1021, we said: "We have held that a failure to obey an ordinance passed for the protection of the public is negligence per se. * * * But this is not an inflexible rule, applicable to every conceivable situation.

* .*. * Traffic ordinances are to be given a reasonable construction. * .* * .So, notwithstanding the existence of an ordinance requiring a vehicle meeting another to pass to the right, a person is not negligent per se if he turns his vehicle to the left, and thus passes a vehicle approaching him on the wrong side of the road in such manner as to make it impossible or impractical to pass to the right. If, in turning to the left, he acts as a person of ordinary care and prudence would act in the circumstance, he is not guilty of negligence; otherwise, he is." See, *Geri v. Bender,* 25 Wash. (2d) 50, 168 P. (2d) 144, and *Bissell v. Seattle, etc. Motor Freight,* 25 Wash. (2d) 68, 168 P. (2d) 390.

█ It is urged that instruction Number 12 is taken verbatim from our opinion in *Publix Cab Co. v. Phillips,* 98 Colo. 542, 58 P. (2d) 486. As often said, a general statement in an opinion, particularly where it is obiter dictum, does not constitute blanket approval of its use as an instruction. In the Publix Cab Company case the question whether the ordinance should be given absolute or relative construction was not involved.

█ Plaintiff in error further urges error in the refusal of the trial court to instruct as to a pedestrian's duties in crossing a street. The court gave only the general stock instructions as to contributory negligence, but instructed in detail in the words of the ordinances with further emphasis by instruction No. 12 as to specific matters which would constitute negligence on the part of defendant's driver. Defendant tendered an instruction as to the duty of pedestrians to keep vigilant watch in crossing a street, and we believe he was entitled to an instruction to that effect.

Considering all these matters, together with the unusually large verdict and judgment, we are convinced that the instructions were confusing and prejudicial to defendant and require reversal of the judgment.

█ Although such conclusion is determinative of the case, we further call attention to defendant's objec-

tion to the instruction as to damages, for the avoidance of error in retrial. After the usual instruction as to expenses plaintiff had paid or obligated himself to pay to be considered in determining the amount of damages in case the jury found for plaintiff, the court further required the jury to consider, "The amount of all expenses which the plaintiff may necessarily or reasonably incur in the future for hospital accommodations, physicians, medicine, nurses, and orthopedic appliances in endeavoring to be cured or relieved of such injuries as he has sustained as a result of this accident and other disbursements which he may be reasonably expected to be required to pay as a result of these injuries in so far as they may be shown by the evidence, but not to exceed the sum of $1,000.00 for these particular items." There was no evidence whatever before the jury as to future expenses. For that reason the instruction was erroneous. It is only when there is substantial evidence that future expenditures will be required that such an instruction is proper. *Cookman v. Caldwell,* 64 Colo. 206, 170 Pac. 952; *Seeing Denver Co. v. Morgan,* 66 Colo. 565, 185 Pac. 339. It was prejudicial in leading the jury to suppose by its inference that there had been evidence of future expenses.

Accordingly, the judgment is reversed and the case remanded.

MR. JUSTICE HILLIARD and MR. JUSTICE HAYS dissent.

MR. JUSTICE HAYS dissenting.

I am unable to agree with the conclusions of the court as expressed in the majority opinion and therefore dissent.

The court reverses the judgment of the trial court for the reason, as stated, that certain instructions "were confusing and prejudicial to defendant." In order properly to consider this reason, I believe it necessary to set

out: (1) What said instructions are; (2) that objections were made thereto; (3) whether they properly state the law; and (4) whether or not they are confusing and prejudicial.

Instruction No. 10 reads: "The court further instructs the jury that whenever the violation of a city ordinance proximately causes injury, such violation is termed negligence per se, that is to say negligence in and of itself and you are instructed that if you find that the injuries of the plaintiff and of his wife, Rita C. Cooper, were brought about as the direct and proximate result of the violation by the defendant's employee of any of the provisions of the foregoing ordinances of the City and County of Denver, such violation renders the defendant liable to the plaintiff."

The objection of defendant to the giving of the instruction is as follows: "The defendant objects and excepts to the court's instruction number 10, in that it simply sets forth the plaintiff's side of the case in regard to the violation of a city ordinance, and does not set forth the defendant's case; the defendant having tendered his instruction number 1, which is an abstract statement of the law, and would apply to either plaintiff or defendant, and which instruction was denied by the court, which means, as the instruction now stands, the court is instructing that if the defendant violated the ordinance he would be liable to the plaintiff, but does not instruct the jury in any manner whatsoever, if the plaintiff violated an ordinance."

Instruction No. 12: "Reasonably construed, Section 15 (a) of the Denver ordinance, giving a pedestrian the right of way means that when people are crossing a street at an intersection to which the provisions of the ordinances are applicable, and a motor truck is approaching the crossing at a speed and on a course such that either the pedestrians or the truck must alter speed or direction to avoid a collision, the driver of the truck must act so as to avoid running down the pedestrians

and his failure to do so is a violation of the ordinances and constitutes negligence."

The objection of defendant to the giving of instruction No. 12 is as follows:

"The defendant objects and excepts to the giving of the court's instruction number 12, in that it is an attempt to enlarge upon the ordinance; that it is taking one bit of the evidence and construing it without taking into consideration other facts in evidence, and it is an invasion of the province of the jury, and is misleading. That if one part of the ordinance is to be elaborated upon, that all ordinances given could be elaborated upon.

"The defendant objects and excepts to the giving of the court's instruction number 12 further because undue emphasis is given to only one section of one ordinance."

The above objection to instruction No. 10 summarized is, (1) that it sets forth plaintiff's side of the case and not the defendant's; (2) that the court, while instructing that the defendant would be liable for the violation of the ordinances, failed to instruct that the plaintiff would likewise be liable if he violated said ordinances of the city.

The gist of the defendant's objection to instruction No. 12 is that, it over-emphasizes one section of the traffic ordinance. In its instruction No. 9, the trial court quoted the applicable provisions of the city traffic ordinances relating to "pedestrians rights and duties," "lights and brakes," "reckless driving," "careless driving and speeding," and set forth verbatim section 15 (a) thereof relating to pedestrians' rights of way at intersections. That section was quoted verbatim in the majority opinion and need not be repeated here, but it should be noted that said section provides in simple language that the operator of a motor vehicle shall yield the right of way to a pedestrian crossing the street within a marked or unmarked crosswalk at the end of a block. It also prohibits the pedestrian from crossing at any other point

and provides that if he does so, the motor vehicle shall have the right of way.

The author of the majority opinion says that the above instruction No. 10 is objectionable, "in that under it, in case the jury found the plaintiff's injury was the proximate result of the violation of an ordinance 'such renders the defendant liable to the plaintiff' *even though plaintiff may have been guilty of contributory negligence.*" No such objection was ever made to said instruction, and I submit with utmost respect, even if proper objection had been made, that the instruction cannot reasonably be so interpreted. The liability of defendant is expressly conditioned upon a finding that the injuries of the plaintiff "were brought about as the *direct and proximate result* of the violation by the defendant's employee of any of the provisions of the foregoing ordinances." Unless the conduct of defendant's employee was the *direct and proximate* cause of the accident, defendant, under the express directions of the above instruction, cannot be held liable. In addition, instruction No. 10 should be construed with instruction No. 7 given by the court on proximate cause, which reads: (Italics supplied) "The proximate cause of a collision is that cause of which the collision is the natural and ordinary result. It is that cause which, in natural and continued sequence, unbroken by any efficient intervening cause, produced the collision, and without which the collision would not have occurred."

If plaintiff had been guilty of contributory negligence, for instance, such negligence would have been the "efficient intervening cause," and the violation by defendant's employee of the ordinance would not have been the cause of the injuries "in natural and continued sequence," nor the "direct and proximate cause."

It is stated in the majority opinion, in connection with the above: "Under the rule that the instructions should be read together, it may be urged that it was cured by the subsequent instructions, in common form, as to con-

482

tributory negligence and the law when both parties are at fault. * * *" There is no statement as to what the subsequent instructions are. I submit that in order to determine whether or not the subsequent instructions on contributory negligence do cure the alleged defects in the above instruction, it is necessary first to examine such subsequent instructions. Instruction No. 13 reads: "You are instructed that contributory negligence means the failure to observe that degree of care which ordinarily careful and prudent persons usually observe under the same or similar circumstances to protect themselves from injury and by reason of such failure help to cause or bring about the injuries complained of; and in this case *if you find from a preponderance of the evidence that the plaintiff was guilty of any act or omission on his part herein which amounts to a want of ordinary care and prudence, which concurring or cooperating with some negligent act or omission on the part of the defendant was the proximate cause of the accident, then your verdict must be for the defendant and against the plaintiff in this case, on the first cause of action.*" (Italics supplied)

By this instruction the jury was plainly told that if plaintiff failed to observe the proper degree of care and such failure helped to cause or bring about the injury complained of and which *concurred or cooperated with the negligent acts of the defendant,* then the verdict must be for the defendant. The trial judge, however, did not stop there in his effort to avoid confusion and protect the rights of the defendant. In instruction No. 14 he said: "A person who leaves a place of safety and puts himself in a place of danger without giving reasonable heed to the possible consequence of his act is guilty of contributory negligence."

The court, out of an abundance of caution, gave further instructions Nos. 15 and 16, to wit:

"15. The law is that when both parties are at fault, neither can recover, and you are instructed that if you

find from a preponderance of the evidence that the plaintiff by his own act contributed to the injuries and damages, if any, he sustained by the omission of some things he should have done or by the commission of some act without which the injuries and damages would not have been sustained, then in such case your verdict must be for the defendant on the first cause of action.

"16. If you find from a preponderance of the evidence that the wife of the plaintiff was guilty of contributory negligence, then the plaintiff cannot recover anything on his second cause of action irrespective of whether or not the plaintiff was guilty of contributory negligence."

By its instruction No. 23 the trial court told the jury, inter alia: "No single one of these instructions states all the law applicable to the case, but all these instructions must be taken, considered and read together, as they are connected and related to each other as a whole."

In the light of the above and foregoing instructions taken and considered together as above required, I submit with utmost sincerity that if either party received any advantage by reason of said instructions, it was the defendant and not the plaintiff, and that a careful reading of the instructions will fully demonstrate that the court even leaned backwards in an effort to avoid confusion and to protect defendant from an improper and erroneous verdict. I further submit that there was no error committed by the trial court, as a matter of law, in the giving of the above instruction No. 10, and that if there was some technical objection thereto, that the same was cured by the above mentioned subsequent instructions.

In the majority opinion, instruction No. 12 by which the court attempted to explain to the jury a proper interpretation to be placed upon section 15 (a) of the ordinances with respect to pedestrians' rights at crosswalks, is said to be objectionable; also it is held that the instruction "is objectionable" because, "first, it singles

out the right-of-way ordinance specifically as though it were of extraordinary importance; second, that by this instruction if the jury found, as it doubtless did find, that plaintiff pedestrian was crossing within the crosswalk, then it was required to find defendant negligent regardless of the circumstances, for under its mandate 'the driver of the truck must act so as to avoid running down the pedestrian.' "

With respect to the first objection, that the pedestrians' right-of-way section of the ordinance was singled out as of extraordinary importance, an examination of the record will disclose that the court was perfectly justified in so doing, particularly because of defendant's objection to instruction No. 9, to wit: "The defendant objects and excepts to the giving of that part of the court's instruction No. 9 hereinafter referred to; that is, section 52 of the ordinance in regard to the *lights and brakes,* on the ground that there is *no evidence in this case of defective brakes or lights.* And section 56 of the ordinance on the ground there is no evidence of any reckless driving in this case. That reckless driving as indicated by this ordinance, is defined in numerous supreme court decisions, and examination of those decisions shows this ordinance is not applicable. And to that part of section 57 in regard to speed limit of twenty-five miles per hour, as there is *no evidence* in this case that the speed of the defendant's truck was in excess of twenty-five miles an hour, in fact, there was *no evidence* whatsoever as to the speed of the defendant's truck." (Italics supplied)

It therefore is obvious from the statement of defendant's own counsel, that the right-of-way portion of the ordinance was in fact of extraordinary importance because that is the only portion of the ordinance which defendant's counsel would admit there was any evidence upon. He expressly says that there was no evidence whatever to support the alleged violation of any other section of said ordinance by defendant. Under such cir-

cumstances the first objection to instruction No. 12 is untenable. In addition we have held that an instruction on an inapplicable ordinance is not prejudicial. *Bauserman v. White,* 108 Colo. 101, 114 P. (2d) 557.

A conclusive answer to the second objection to said instruction No. 12 is, (1) that no objection was made by defendant that it was an incorrect statement of the law, and consequently, cannot be considered. See, *Dillulo v. People,* 56 Colo. 339, 341, 138 Pac. 33; *Modern Woodmen v. White,* 70 Colo. 207, 199 Pac. 965; *Sarno v. People,* 74 Colo. 528, 223 Pac. 41; *Koontz v. People,* 82 Colo. 589, 263 Pac. 19. (2) That it was taken word for word from *Publix Cab Co. v. Phillips,* 98 Colo. 542, 546, 58 P. (2d) 486, which was an en banc decision delivered by Justice Young, with only one dissent, a case involving the same ordinance and same section. The rule there announced was followed in *Fabling v. Jones,* 108 Colo. 144, 114 P. (2d) 1100, which likewise was an en banc decision with but one dissent, and likewise involved the same section and ordinance. Mr. Justice Knous in delivering the opinion, said: "If, under section 15 (a) of the Denver traffic code, plaintiff 'was within any marked crosswalk or within any unmarked crosswalk at the end of a block,' *it was the duty of young Fabling to yield the right of way to her.* On the other hand, under section 15 (c) of the Denver traffic code, on a street of the classification of Colfax avenue in the area under consideration, it is made 'unlawful for a pedestrian to cross a roadway at any point other than within a marked or unmarked crosswalk' and 'a pedestrian crossing such roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway.'" (Italics supplied) Consequently, the law as set forth in said instruction has been settled law in this state since 1936, and there appears to be no justification to deviate therefrom.

Contrary, as I view it, to the clear holding in the above cases by our court, and the weight of authority in other

jurisdictions, it is stated in the majority opinion: "The right of way granted pedestrians by this ordinance does not give such extensive protection as stated in the instruction. We believe the better rule to be that, the motorist is not an insurer of a pedestrian's safety, but is required only to use reasonable care in yielding the right of way; that the pedestrian's right is not absolute, but relative."

Three cases from other jurisdictions were cited in support of the majority opinion, none of which were cited or relied upon by astute counsel for defendant. At least two of said three cases cited are referred to in notes to section 1272, 2 Blashfield Cyclopedia of Automobile Law and Practice, also cited in the majority opinion, which section concludes with the following: "Such right of way does not impair the duty of the pedestrian to exercise ordinary care to avoid a collision. *It means no more than that, when two or more persons, moving in different directions, approach the crossing at the same time or in such a manner that, if both or all continue their respective courses, there is danger of a collision, then the pedestrian is entitled to the first use of the crossing, and it is the duty of others to give him reasonable opportunity to make such use. The motorist, therefore, on approaching an intersection, must have his car under such control as to give way to a pedestrian who is crossing the intersection and who is in the line of travel the motorist intends to take, or in such proximity thereto that, if he continues, he will reach the same in advance of the motorist; and, if the pedestrian is upon a crosswalk at a street intersection, using it in an orderly and reasonable manner, the driver of an approaching vehicle must give sufficient warning of its approach and avoid coming within striking distance.*" (Italics supplied)

The Publix Cab Company case was decided after publication of the above text, but that case is cited by the author in the "Cumulative Pocket Part" published in 1947, as supporting the above statement. There can be

no doubt that the law as announced in the Publix Cab Company case is in strict accord with the above statement taken from the text, which is cited and relied upon in the majority opinion.

In support of the above statement contained in the majority opinion, that the motorist is only required to use reasonable care in yielding the right of way, and that the pedestrian's right of way is not absolute but relative, that he cannot act recklessly nor intrude himself into traffic, the case of *McDonald v. Wickstrand* (1931), 206 Wis. 58, 238 N.W. 820 was cited. There is no evidence in the instant case that plaintiff acted recklessly or intruded himself into the midst of traffic, nor is there any contention on behalf of defendant that such was the case. This court no doubt overlooked the following excerpts from the McDonald case which are especially pertinent to the issues herein involved:

"A pedestrian crossing the highway within any marked or unmarked crosswalk at an intersection where the movement of traffic is not being regulated by traffic officers or control signals, has the right of way. Sec. 85. 44 Stats., *requires the driver of an automobile to yield the right of way to a pedestrian under those circumstances.*

"*The difficulties arising from administering a rule which sought to give the automobile and a pedestrian equal rights at crossing resulted in disadvantages and some misfortune to pedestrians.* The rapid movement and the bulk of the automobile, the thoughtlessness of some drivers, and the determination of the traveler on foot, brought conflicts if not collisions which resulted in a feeling that *the pedestrian, in the nature of things, ought to have a reasonable opportunity when properly upon the street at a crosswalk to reach the sidewalk. Raabe v. Brzoskowski,* 204 Wis. 319, 236 N.W. 133. *This feeling eventually ripened into a public opinion that found expression in the legislation above referred to.* That the respondent was where he had a right to be no

one questions, and that he had the benefit of the assurance that the law required oncoming drivers to yield him the right of way is certain.

\* \* \*

"As to what constitutes ordinary care in such a case is generally, though not always, a question for the jury. Here the element of reassurance as to the right of way and the expected yielding thereof on the part of a driver takes some of the burden of the necessity of dodging across streets from the pedestrian.

"So it may be said that one proceeding across a street at a regular crossing, as in this case, who looks to his right and left a sufficient distance to ascertain that no automobile traveling under and according to the requirements of the statute is within a threatening distance from either direction, is not so clearly guilty of negligence as to permit taking the question from the jury. \* \* \* Respondent had a right to proceed in the expectation that those approaching by automobile would observe the rule of law governing in such cases. Under the circumstances it was for the jury to say whether or not the care exercised by respondent was ordinary care for his safety." (Italics supplied)

A later case more analogous to the instant case and from the same state as the above case, decided March 8, 1932, is *Edwards v. Kohn,* 207 Wis. 381, 241 N.W. 331, wherein the Wisconsin Supreme Court said: "The case was submitted to the jury in the form of a special verdict. Question 7 was: 'Did the plaintiff, Louise Edwards, have the right of way across the highway at the time and place in question?' And question 8 was: 'If you answer the seventh question in the affirmative, then answer this: Did the defendant Edward Kohn fail to yield to the plaintiff, Louise Edwards, the right of way to which she was entitled?' The jury found that the plaintiff had the right of way, which the defendant Edward Kohn failed to yield. It is claimed that the eighth question should have been: 'Did the defendant Edward

Kohn fail to exercise such care as the great mass of mankind ordinarily exercises when acting under the same or similar circumstances in respect of failing to yield to Louise Edwards the right of way?' *The contention in this behalf assumes that sec. 84. 44 (1) Stats., providing that 'the operator of any vehicle shall yield the right of way to a pedestrian crossing the highway within any marked or unmarked crosswalk at any intersection except at those intersections where the movement of traffic is being regulated by traffic officers or traffic control signals.' does not impose upon the driver of an automobile the absolute duty to yield the right of way, but only to use ordinary care in that behalf. Such is not the effect of safety statutes. This statute imposes upon the drivers of automobiles the absolute duty of yielding to pedestrians on crosswalks, as therein defined, the right of way, and juries will not be permitted to find a compliance with this statute on the part of offending automobile drivers on the ground that such drivers were in the exercise of that degree of care that the great mass of mankind ordinarily exercises when acting under the same or similar circumstances. The contention made by the defendants in this respect cannot be sustained."* (Italics supplied)

While I fully believe that the Publix Cab Company and Fabling decisions of this court correctly state the law and conclusively establish that there can be no legal objection to instruction No. 12 as given, yet, if decisions from other jurisdictions are required, the ones involving ordinances or statutes comparable to ours should be considered. A few of such cases are: *United States v. Standard Oil Co.,* 60 F. Supp. 807, affirmed 153 F. (2d) 958, affirmed 87 Sup. Ct. 67; *Vanderpool v. Dunham,* 35 Cal. App. (2d) 166, 94 F. (2d) 1023; *Bethea v. Virginia Elec. & Power Co.,* 183 Va. 873, 33 S.E. (2d) 651; *Kerr v. Floyd,* 25 Wash. (2d) 135, 169 P. (2d) 349; *Baston v. Shelton,* 152 Fla. 879, 13 So. (2d) 453; *Universal Credit Co. v. Merryman,* 173 Md. 256, 195 Atl. 689; *Maselli v.*

*Stephens*, 331 Pa. 491, 200 Atl. 590; *Maneff v. Lamer*, 148 Ore. 455, 36 P. (2d) 336.

In *Bethea v. Virginia Elec. & Power Co., supra,* the court said:

"If the collision occurred at a 'regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk', as the plaintiff contends it did, it was the duty of *the bus driver to have yielded the right of way to him* (Michie's Code of 1942, sec. 2154 (123), (c); Motor Vehicle Code, section 76, (c); Acts 1932, ch. 342, p. 613, at page 655), *or to have changed his course, slowed down, or come to a complete stop 'if necessary', in order that the plaintiff might 'safely and expeditiously negotiate the crossing.'* (Michie's Code of 1942, sec. 2154 (126), (c); Motor Vehicle Code, sec. 79, (c); Acts 1932, ch. 342, p. 613, at page 655.) *Miller v. Jones,* 174 Va. 336, 339, 340, 6 S.E. (2d) 607, 609.

\* \* \*

"If they were crossing the street at the proper place, they had the right of way during the entire crossing, that is, from one side of the street to the other. As we said in *Lucas v. Craft,* 181 Va. 228, 235, 170 S.E. 836, 838, *'At intersecting streets where there are neither traffic lights nor traffic officers, the pedestrian has a superior right—that is, the right to cross from one side of the street to the other in preference or priority over vehicles —and drivers of vehicles must respect this right and yield the right of way to the pedestrian. The pedestrian's right of way extends from one side of the street to the other. It does not begin at any particular point in the intersection, nor does it end at any particular point. It begins on one side of the street and extends until the pedestrian has negotiated the crossing.'*

\* \* \*

"Neither was it necessary for the plaintiff to *have looked continuously at the approaching bus as he crossed. Sawyer v. Blankenship,* 160 Va. 651, 657, 169 S.E. 561, 563; *Virginia Electric & Power Co. v. Steinman,* 177 Va.

468, 474, 475, 14 S.E. 2d 313, 315, and authorities there cited. *If he was crossing at a proper place, the plaintiff had the legal right to assume that the driver would give him the right of way, a right which the drivers of motor vehicles too often overlook. Whether the plaintiff was exercising a reasonable lookout for his safety as he crossed the street was a question for the jury."* (Italics supplied)

In *Maneff v. Lamer, supra,* an instruction was given by the trial court in which it used some of the identical language to be found in the majority opinion, and the supreme court of Oregon reversed the judgment on the ground, inter alia, that the given instruction did not correctly state the law. The instruction read: "I instruct you that while it is a rule of law that a pedestrian at a regular crossing place has the right of way, yet, *I also instruct you that this right of way is not an absolute one,* and if a motorist comes to an intersection and the conditions are such that, as a reasonably prudent person, a collision is not to be reasonably apprehended with a pedestrian, and the conditions are such that, as a reasonably prudent person, there was sufficient time within which to pass in front of the pedestrian with his automobile and a contact with the pedestrian was not to be reasonably apprehended, then I instruct you that the motorist would have the right of way." The Oregon court held that the above instruction was erroneous and that the court should have given the following requested instruction in lieu thereof: "I instruct you that, if you should find from a preponderance of the evidence that the plaintiff was using a legal pedestrian crossing in a business district, then and in that event, *it was the duty of the defendant to look out for and yield the right of way to the plaintiff,* and if the defendant under such circumstances failed and neglected so to do, then and in that event he would be guilty of negligence, and if such negligence was the proximate cause of plaintiff's injuries,

and the plaintiff himself was free from negligence, then and in that event your verdict must be for the plaintiff."

After quoting verbatim from the statute involved which, as above mentioned, is almost identical to that of the ordinance here under consideration, the supreme court of Oregon said: *"Under the express provisions of this statute a pedestrian, while crossing a street intersection on a regular pedestrian crossing, is given the right of way over motor vehicles* unless, as the statute provides, the traffic is being regulated at such intersection by an officer or by traffic control signals or some tunnel or overhead crossing has been provided. *Under the plain directions of this statute, it is the duty of the driver of a motor vehicle, in approaching a pedestrian lane, to observe whether pedestrians are crossing thereover, and, if so, to give them an opportunity to pass in safety and, if necessary for their protection to check the speed of his car or even to stop and wait until all danger of injuring any pedestrian is passed [past]. There is no provision of the road law more essential to the safety of the public nor one more frequently and openly violated by motorists than this provision of the law.* The instruction objected to failed to give effect to this provision of the statute by charging the jury that, under the circumstances stated in the instruction, the motorist and not the pedestrian had the right of way. Regardless of whether or not a reasonably prudent person in a given case would reasonably apprehend that he could pass with his automobile in front of a pedestrian in a pedestrian lane without coming in contact with such pedestrian, it would not give to the motorist the right of way over the pedestrian. * * * We think that the instruction requested and refused contained a correct statement of the law applicable to the case, and that the court's refusal to give that instruction was error, which error was contained in, and accentuated by, the instruction given. For these reasons, the judgment is reversed." (Italics supplied)

The rule announced in the majority opinion, that the motorist "is required only to use reasonable care in yielding the right of way," completely ignores the ordinance which requires a motorist to "yield the right of way" to a pedestrian. The rule now adopted by this court reverts to the law of equal rights between automobiles and pedestrians, in force before ordinances such as are here under consideration were adopted. The injustice of such law "eventually ripened into a public opinion that found expression in the legislation * * *." *McDonald v. Wickstrand, supra.*

In view of the foregoing this court was fully justified in stating as a matter of law in the Publix Cab Company case, that under the circumstances there involved, it was the statutory duty of the driver to "alter speed or direction to avoid a collision" and "so act as to avoid running down the pedestrian."

Notwithstanding the above, the majority, in the opinion, disposes of the Publix Cab Company case in the following language: "It is urged that this instruction is taken verbatim from our opinion in *Publix Cab Co. v. Phillips,* 98 Colo. 542, 58 P. (2d) 486. As often said, *a general statement in an opinion, particularly where it is obiter dictum, does not constitute blanket approval of its use as an instruction.* In the Publix Cab Company case the question whether the ordinance should be given absolute or relative construction was not involved."

The question "whether the ordinance should be given absolute or relative construction" was, I submit, as much involved in the Publix Cab Company case as it is here. In that case this court was content to give force and effect to a legislative enactment which gave to a pedestrian the right of way, and imposed upon the motorist the duty to yield such right of way. Here, for reasons best known to author and concurring justices in announcing the majority opinion, the ordinance, without justification, is rendered impotent, and the so-called question of "absolute or relative construction" is raised

by this court for the first time. Such question is not presented by the pleadings herein nor is it argued or discussed by the parties hereto. or their counsel. The question came out of the clear sky when the opinion was announced. If this court were now satisfied to uphold the ordinance rather than to destroy it, the above question would not be involved herein.

Our court did not see fit in the instant case to expressly overrule the decision in the Publix Cab Company case, but by innuendo, it would appear that the reason for not following that decision is that, Justice Young's statement therein, as set forth in instruction No. 12 herein, is said to be "obiter dictum."

It seems to me that it would come with far better grace for the court in the instant case expressly to overrule the decision in the Publix Cab Company case, if it is now considered by the court to be an improper statement of the law, than to arbitrarily refuse to follow it on the ground that it is "obiter dictum." We have said that certain language in an opinion was dictum when it "was not the basis of the decision." *Wheeler v. Wilkin,* 98 Colo. 568, 573, 58 P. (2d) 1223. In order, therefore, to determine whether or not the language of Justice Young was the basis of the decision in the Publix Cab Company case and therefore not dictum, it is necessary to examine the issues and facts in that case.

There, Phillips was injured as a result of being struck by a taxicab owned by defendants Meyers and the Publix Cab Company. Included within the acts of negligence allegedly committed by the defendants, as appears from our opinion in the case, was "in failing to have his automobile under control and in failing to watch the street and intersection so as to observe the plaintiff crossing the street at the intersection. Plaintiff charges, also, the violation of section 56 (a) and 15 (a), infra, of the municipal traffic ordinance of the City and County of Denver, then in force. Defendants' answer was a general denial and a plea of contributory negligence, the

latter being denied by plaintiff in his replication." Continuing, we said: "Defendants assign as error the refusal of the trial court to grant their motion for a directed verdict at the close of plaintiff's testimony, and the denial of their motion for a new trial, upon grounds which may be summarized as follows: That the evidence disclosed contributory negligence as a matter of law; that the verdict was contrary to the undisputed physical facts; and that the verdict, was manifestly the result of passion and prejudice."

An examination of the record will disclose that almost the identical issues were raised in the instant case as were considered in the Publix Cab Company case.

If there is any doubt as to whether or not our language used in the Publix Cab Company case is dictum and not the "basis of the decision," I call attention to the following additional excerpt from the opinion:

"From the evidence, much of which was conflicting, the jury was warranted in finding the following facts: That the accident occurred a little after seven o'clock in the evening of March 18th, 1933, at the intersection of Curtis and 19th streets in the city of Denver; that plaintiff was 67 years of age and was proceeding in a general westerly direction along the southerly side of Curtis street on that portion of 19th street regularly used by pedestrians in crossing the latter; that when he had arrived a few feet from the curb he was struck on his right side by defendants' cab which was proceeding in a general southerly direction along the westerly lane of traffic on 19th street, and knocked down, his resulting injuries being sufficiently severe, if negligently inflicted, to sustain the verdict; that there was no traffic light at the intersection; that before he started to cross the street and after he was in the street, he looked to the right as he was crossing; that the street is wide; that after he was in the street he did not see anyone near; that when he looked defendants' cab was fifty feet away

496

and he continued across; that he could not tell how fast the car was traveling.

* * *

"In this case we have a situation in which the plaintiff looked and saw the car; he thought it was not close —that it was fifty feet away; and since it may be assuméd that men of normal minds do not desire to be injured, the jury might well have inferred that he thought he could cross without being injured. He lacked only a few feet, when struck, of being out of the path of danger. We do not here have a case of failing to look, nor one of looking and failing to see the approaching car, it is a case of an old man looking and seeing, and believing that he could cross safely ahead of the car. We think it clearly was a question for the jury to determine whether, under the disclosed facts, a reasonably prudent man in the situation of plaintiff, with his understanding of the circumstances, would have believed he could cross with safety. Moreover, there was in effect a right of way ordinance—section 15 (a), supra—enacted for the protection of pedestrians at intersections such as the one here involved. In a former case we said: 'The plaintiff had a right to assume, in the absence of reasonable grounds to think otherwise, that others would perform their duty and obey that traffic regulation.' *Crosby v. Canino*, 84 Colo. 225, 268 Pac. 1021."

Let us now examine and compare the factual situation of the two cases, which I consider are very similar and in many respects identical.

They involve the same ordinance and the same section of the ordinance; they involve a pedestrian-automobile collision upon a crosswalk in the streets of Denver; the plaintiffs in both cases were elderly men, being more than sixty years of age at the time of the accident; plaintiff in each case had entirely crossed the intersection upon the crosswalk except for a very few feet when the collision occurred; plaintiffs in both cases looked both ways before proceeding across the street, to ascertain

if vehicular traffic was approaching, and both thought they had ample time in which to cross the street; both plaintiffs observed and complied with all of the ordinances of the City and County of Denver, including section 15 (a), which required them to walk upon the crosswalk; defendants in both cases did not yield the right of way to the plaintiff as the law requires; in both cases defendants alleged that plaintiffs were guilty of contributory negligence, both as a matter of law and fact, because they did not look often enough; the trial court in both cases ruled that plaintiffs were not guilty of contributory negligence as a matter of law, and the juries in both cases returned verdicts that the plaintiffs were not guilty of contributory negligence as a matter of fact.

It is obvious from the foregoing, that the statement in the Publix Cab Company case was the "basis of the decision;" that the point was actually and deliberately determined in the case; that it is accordingly not "obiter dictum," and the doctrine of stare decisis requires that it be followed here.

What has been said above with respect to obiter dictum is predicated upon the statements of the court in the main opinion, and not upon the contentions of the defendant. Nowhere, so far as I have been able to determine, has the defendant or his counsel contended that the statement contained in Justice Young's opinion is contrary to law, is obiter dictum, is an improper interpretation of the ordinance, or is in any manner confusing. Those questions are raised for the first time in the opinion, not in the briefs; consequently, it is important to examine here the contentions of defendant.

Counsel for defendant in their brief specify eight separate grounds for reversal. All of these, except point No. 5, have been disposed of in the majority opinion either upon the ground that the same were adversely decided to the defendant in the companion case, or were otherwise without merit. Point No. 5 is as follows: "The

court improperly instructed the jury in respect to the traffic ordinances and the applicability of such ordinances." With respect to this point counsel say in their brief: "It will be seen that the instructions when they went to the jury were to the effect that certain ordinances were in effect in the City and County of Denver; that if the defendant violated any of these ordinances, and by reason thereof the plaintiff was injured, then the defendant was liable to the plaintiff without giving a converse instruction to the effect that if the plaintiff violated any of the ordinances which were the proximate cause of the injuries, then the verdict should be for the defendant. Error in this respect would have been averted if the Court's Instructions Nos. 10 and 12 had not been given and defendant's tendered Instruction No. 1 had been given as this works equally for both! parties. *In other words, the jury should not be instructed that if the defendant violated the ordinances, recovery could be had; and yet have the instructions silent as to what the penalties would be if the plaintiff violated the ordinances.*" (Italics supplied)

It will be noticed that defendant does not object to the instruction taken verbatim, as above shown, from the Publix Cab Company case as being an erroneous statement of the law, but complains because the trial court did not give "a converse instruction" as to what should happen *"if the plaintiff violated the ordinances."*

Defendant's sole and only complaint is that the instruction should have carried a provision as to what the jury should do in the event it found plaintiff guilty of violating some *ordinance*, and not that the plaintiff was guilty of *contributory negligence.* It was not alleged in pleadings, nor shown by the evidence, nor contended by counsel in their briefs, that the plaintiff violated any ordinance. The only reference thereto is in the objection to an instruction. It has only been contended that the plaintiff was guilty of contributory negligence in failing continuously to look as he crossed the street, an

act not required by the ordinances nor the decisions. *Filson v. Balkins,* 206 Cal. 209, 273 Pac. 478; *Schulman v. Los Angeles Ry. Co.,* 44 Cal. App. (2d) 122, 111 P. (2d) 924; *Davis v. Riegel,* 182 Wash. 1, 44 P. (2d) 771; *United States v. Standard Oil Co.,* 60 F. Supp. 807; *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649; *Sheriff Motor Co. v. State,* 169 Md. 79; 179 Atl. 508; *Olson v. Evert* (Minn.), 28 N.W. (2d) 763 (Decided August 29, 1947).

The court in the last case above cited, after reviewing the decisions on the point herein considered, stated (Quoting from Reier v. Hart, 202 Minn. 154, 277 N.W. 406): "The law has not fixed any hard and fast standard defining the duties of pedestrians crossing streets. Negligence of a pedestrian is not determined by the number of times he looked. The law does not say how often he must look or when or from where. If observation is made before entering the street, failure to look the second time while crossing the street is not necessarily contributory negligence as a matter of law. * * * A pedestrian is not required to look continuously in any particular direction."

A careful examination of the record herein convinces me that the jury in this case was neither confused nor prejudiced by the instructions. It arrived at the same verdict as did the jury in the companion case (Stahl v. Rita C. Cooper), and in the latter case the criticized instructions above mentioned were not given to the jury. This to me is conclusive proof that the jury herein was not confused, and that the verdict returned by it was the only one possible under the evidence. No jury but a confused one could have rendered a verdict for the defendant. He had no defense and refused to put the driver of the truck on the witness stand. He offered testimony by only two witnesses concerning the condition of the truck after the accident. He offered no evidence whatsoever concerning the accident itself. This accident was one which clearly could have been avoided by a simple compliance with the mandatory require-

ments of the ordinance and yielding the right of way to the pedestrian for a very few seconds.

In the majority opinion it is said: "Defendant tendered an instruction as to the duty of pedestrians to keep vigilant watch in crossing a street, and we believe he was entitled to such instruction." This was defendant's requested instruction No. 3, which is as follows: "Pedestrians must also keep a vigilant watch for vehicles and at the first appearance of danger *take the proper steps to avert it.* In case of accident, a pedestrian will be presumed to have seen what he could and should have observed." (Italics supplied)

This presents a strange situation. The court, in its opinion, criticized the phrase in instruction No. 12, that "the *truck must alter speed or direction to avoid a collision, the driver of the truck must act so as to avoid running down the pedestrians * * *",* and says that in relation to instruction No. 12, it was confusing to the jury. The court now states that the trial court erred in not giving defendant's requested instruction No. 3, which places the burden upon the pedestrian to *"take the proper steps to avert"* the collision. (Italics supplied)

I must confess my utter inability to understand why the statement in instruction No. 12, which I have italicized, was confusing to the jury, and that at the same time the italicized portion of requested instruction No. 3 would not, if given, be confusing to it. Instruction No. 12 places the duty upon the driver of the vehicle to avoid the collision, and gives force and effect to the ordinance; whereas requested instruction No. 3 places that duty upon the pedestrian, contrary to the express mandatory provisions of the ordinance.

If permitted to stand, the majority opinion will have the effect of amending the ordinance by adding thereto the requirement that the pedestrian, in order to enjoy the privilege conferred by the ordinance, must, as a condition thereto, continuously look in the direction of the motor vehicle which is about to hit him.

It is nowhere disputed that the council had a right to define the respective rights and duties of the motorists and pedestrians on crosswalks. The pedestrian was prohibited from crossing the street, except at the crosswalk. That was the only place in which he had the right of way. At all other places the vehicle operator has the right of way. The ordinance does not require the pedestrian to continuously look—that duty is expressly imposed upon the driver of the vehicle and if there is a pedestrian in the walk, the further duty is imposed upon the vehicle driver to yield the right of way.

All this is changed if the opinion stands. The pedestrian no longer has the right of way unless he does something more than the ordinance requires, viz., to continuously look. The driver of a vehicle is not required to yield the right of way if he can catch the pedestrian when he is not looking. This court says in effect that the vehicle driver can violate with impunity all the ordinances of the city, if the pedestrian for a brief moment turns his eyes in another direction. The obligation imposed by this court on the pedestrian to look, supersedes all obligations of the auto driver to comply with the provisions of the ordinance. This court, it now seems, has the last word as to the rights and duties of operators of vehicles and pedestrians at crosswalks.

Mr. Justice Hilliard concurs in this dissent.