No. 21016.

DAVID GUSHURST, ADMINISTRATOR OF THE ESTATE OF FRANCIS WILSON HENNIS, AKA F. W. HENNIS, DECEASED *v.* WANDA BILLIE BENHAM.
(417 P.2d 777)

Decided September 6, 1966.

Perry E. Williams, Phelps, Fonda, Hays & Wills, for plaintiff in error.

Thulemeyer & Stewart, for defendant in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the court.

Wanda Billie Benham, hereinafter referred to as the claimant, filed a claim against the estate of one Francis Wilson Hennis in the County Court of Otero County. Francis Wilson Hennis will hereinafter be referred to as Hennis, and his son will be referred to by full name. This claim stemmed from an automobile accident and claimant alleged that she suffered damages in the amount of $25,471.20 as a result of the negligence of Hennis. Trial to a jury culminated in a verdict in favor of the claimant in the amount of $15,000.

Upon appeal to the district court, the trial judge dismissed the attempted appeal, holding that the administrator of the estate was not an "aggrieved person" within the meaning of C.R.S. '53, 37-6-10. Upon review we reversed this judgment and held that the administrator was an "aggrieved person" to the end that he could appeal to the district court the adverse judgment which Hennis' estate had suffered in the county court. See *Gushurst v. Benham,* 151 Colo. 159, 376 P.2d 687.

Upon trial de novo of this matter in the district court, a jury returned a verdict in favor of the claimant and against the estate in the sum of $16,000. Judgment thereon was duly entered, and the administrator, in behalf of the estate, now seeks reversal of this judgment.

The administrator in his summary of argument states that the trial court erred in five particulars. We would pinpoint these alleged errors on the part of the trial court by further summarizing as follows: the trial court allegedly committed error (1) in refusing to hold as a matter of law that the *sole* proximate cause of claimant's injuries was the gross negligence of her husband, Frank Benham; and (2) in refusing to allow two persons, who had been called as witnesses by the administrator of the estate, to testify as to separate conversations each had with Hennis about one and one-half hours to three hours after the accident in question. We shall consider these two areas of alleged error in that order.

This "accident," or "three accidents," depending on one's view of the total situation, involved five vehicles, all of which had been proceeding in a westerly direction on U.S. Highway No. 50 a few miles west of La Junta. There was a weed fire of considerable proportions just north of the highway to the end that there was much smoke blowing across the highway. The several witnesses were not in complete agreement as to just "how much" smoke was present and to what precise degree this smoke obscured their vision, though the composite testimony in this regard did establish

most definitely that blowing smoke of considerable density was no doubt a precipitating factor in the enusing collisions.

As was mentioned, all of the vehicles involved were proceeding in a westerly direction, with the Hennis vehicle being the so-called "lead" car. Hennis first drove "into" the smoke and he soon "stopped" his vehicle on the traveled portion of the highway. Hennis died some eight months after this accident, and hence was not present to testify upon either trial of this matter as to why he brought his car to a halt on the traveled portion of the highway, instead of pulling off onto the shoulder of the road.

Moments after Hennis stopped his vehicle, a dump truck driven by an employe of the City of La Junta rammed into the rear-end of the Hennis vehicle; and a minute or two later a vehicle driven by one Josie Palacio drove into the back of the dump truck. Thereafter the driver of the dump truck went back and by hand signal succeeded in stopping a Safeway truck, which was also proceeding in a westerly direction. Immediately thereafter a vehicle driven by Frank Benham, in which the claimant was riding as a passenger, crashed into the rear of the Safeway truck. It was on this concatenation of events that claimant later filed her claim against the estate of Hennis.

■ The administrator argues, in effect, that the trial court should have directed a verdict in behalf of the estate for the reason that claimant's injuries were *solely* caused by her husband's negligence. In this connection the real issue, as we see it, is not whether Frank Benham was guilty of negligence which contributed to his wife's injuries, which he probably was, but whether we are prepared to hold that as a matter of law Hennis was *free* from any and all negligence which was a proximate cause (though not the sole cause) of claimant's injuries. In our view Hennis' act of stopping on the traveled portion of the highway posed issues of fact, both as to

negligence and proximate cause, which under the circumstances were properly to be determined by the jury; it did not pose issues of law to be resolved by the trial court.

■ There is no suggestion that the negligence, if such there was, of Frank Benham under the facts of this case could be imputed to this claimant. Hence, contributory negligence plays no part in this case. Assuming, then, for the sake of argument that Frank Benham was guilty of negligence which was a proximate cause of his wife's injuries, such finding would in nowise preclude the further finding that Hennis was also guilty of negligence which was also a contributing cause of her injuries.

■■ As already mentioned, death prevented Hennis' appearance at trial, and hence we do not know why he stopped his vehicle on the traveled portion of the highway. But that he did stop his car on, and not off, the highway was definitely established. Though smoke was blowing across the highway, the degree to which visibility was obscured was at least somewhat in dispute. Some witnesses described the visibility as "zero." At the same time, however, another Safeway truck drove right on through the smoke, without incident, immediately after the dump truck had struck Hennis' vehicle, and before the Palacio vehicle drove into the dump truck. Whether this smoke, then, was an intermittent thing, or on the contrary was equally dense at all times is not entirely clear. All of which convinces us that there were controverted issues of fact, as well as debatable inferences therefrom, which were properly to be resolved by the trier of the facts, and not by the trial court. It is only in the clearest of cases, where the facts are not only undisputed but reasonable minds could draw only one inference therefrom, that the issues of negligence and proximate cause become issues of law, as opposed to issues of fact. See, *e.g., Lasnetske v. Parres,* 148 Colo. 71, 365 P.2d 250. No error, then was committed in submitting this case to the jury.

Minor complaint is made by the administrator concerning instruction No. 9, and the failure of the trial court to give tendered instruction No. 3. As we understand it, there is no real contention, as such, that instruction No. 9 is erroneous; rather, the complaint is that instruction No. 9 is too "watered down" and doesn't go "as far" as tendered instruction No. 3. Suffice it to say we find no reversible error in this regard.

Claimant called as her witness Josie Palacio, who in addition to testifying as to how she managed to strike the city dump truck, also testified as to a certain conversation she had with Hennis about two or three weeks after the accident. In this latter connection she testified that on that occasion Hennis had told her that the reason he had stopped his car was because he wasn't able to see. No objection was made to this question and answer, and it is said to be admissible on the basis that, though admittedly hearsay, it is an admission against interest.

In defending against this claim, the administrator called a state highway patrolman and one Leo Hennis, son of Hennis, and proposed to have them testify as to separate conversations each had with Hennis about one and one-half to three hours after the accident. Each proposed to testify, if permitted, that Hennis had told him that the reason he had stopped his car on the highway was because there was another car stopped immediately in front of him. Objection, however, was made to this proffered testimony, which objection was sustained. The administrator claims that this interlocutory ruling constitutes reversible error.

The trial court held that the proffered testimony of the state highway patrolman as to his conversation with Hennis was inadmissible because such was purely self-serving hearsay evidence. Further, the trial court specifically rejected the contention of the administrator that Hennis' statement, though hearsay, was nonetheless still admissible as being a part of the res gestae.

As concerns the proffered testimony of Leo Hennis

as to his conversation with his father, the trial court held that such *was* a part of the res gestae, but was nevertheless still inadmissible under the so-called Dead Man's statute. See C.R.S. 1963, 154-1-2.

▌In our view of this matter the proffered testimony of both the highway patrolman and the deceased's son is inadmissible and for the same reason: each constitutes self-serving hearsay, and neither is admissible as a part of the res gestae. In thus disposing of this issue, we need not reach any consideration of the applicability of the Dead Man's statute.

Hennis was injured in this accident and was taken to the office of a doctor in nearby La Junta, arriving there about an hour or so after the accident. Leo Hennis met his father at the doctor's office, and, according to Leo, his father at that time explained his act of stopping on the highway by saying that he "couldn't see." Later on, Hennis was driven to a hospital, and while being readied for x-ray, his son made specific inquiry as to just why his father had stopped on the highway. This time Hennis was claimed to have asserted that he stopped because another vehicle was stopped in his path.

A short time later the state highway patrolman arrived at the hospital and he too questioned Hennis as to the facts and circumstances surrounding the accident. In the offer of proof, the patrolman was prepared to testify that Hennis said he had to stop because another vehicle was stopped in front of him.

As already noted, the trial court held that Hennis' statement to the state highway patrolman was not a part of the res gestae, but that his statement to his son, Leo Hennis, was. The distinction drawn by the trial court was on the basis that Hennis' physical and mental condition as of the time of his conversation with his son was such as to render the same admissible on a res gestae theory. In our view of the matter this distinction is not a valid one. Rather, in our view, Hennis' condition at the time of his conversation with his son was

for all practical purposes about the same as his condition an hour later when he explained his conduct under questioning to the state highway patrolman. Under the circumstances we hold that neither of these utterances attributed to Hennis can be deemed admissible under the res gestae exception to the hearsay rule.

In *Stahl v. Cooper*, 117 Colo. 468, 190 P.2d 891, which was an auto-pedestrian accident where a pedestrian later brought suit against the driver's employer, a statement by the driver of the vehicle which was made to a police officer at the very scene of the accident and very shortly after the time of the accident was held not to be a part of the res gestae. In that case we declared that in order for a statement of this type to be a part of the res gestae it had to be in the nature of an exclamation, and not in a narrative form, spontaneous and instinctive rather than deliberate. As applied to the instant case, Hennis' statements to the state highway patrolman and to his son were both offered in response to questioning, of a type, and was a narrative explanation as to why he stopped on the traveled portion of the highway. Neither of these two statements can be regarded as a spontaneous or instinctive exclamation uttered at least somewhat contemporaneously with the event concerning which the statement was made. The trial court was accordingly correct in refusing to permit either the state highway patrolman or Leo Hennis to testify as to the contents of their conversations with the deceased. Nor does the fact that Josie Palacio testified, without objection, to an admission against interest made by Hennis open the door to other and different statements of the deceased which were purely of a self-serving nature.

Finally, the administrator, who was admittedly handicapped in his defense of this claim because of the death of Hennis, argues that there is something intrinsically unfair in allowing, on the one hand, Frank Benham, husband of the claimant to testify and then re-

fusing to allow witnesses such as the patrolman and Leo Hennis to testify as to what the deceased told them. By the same token, it should be noted, the claimant was also handicapped in supporting her claim against the estate, since under the Dead Man's statute she was precluded by the trial court from testifying as to anything that occurred prior to the date of Hennis' death. But back to Frank Benham, he did not testify as to any conversation with Hennis, but only as to the facts and circumstances surrounding the accident and also as to his wife's physical condition. And inasmuch as he had no "direct interest" in the outcome of the litigation, his testimony did not offend the Dead Man's statute. See *Norris v. Bradshaw*, 92 Colo. 34, 18 P.2d 467 and *Butler v. Phillips*, 38 Colo. 378, 88 Pac. 480.

The judgment is affirmed.

MR. JUSTICE DAY dissents.