484 P.2d 813 (1971)
Glen Arthur ALCORN, Plaintiff in Error,
v.
John ERASMUS, a minor, by his next friend, Joan Woody, and Joan Woody, Defendants in Error.
No. 71-044. (Supreme Court No. 24372.)
Colorado Court of Appeals, Div. II.
April 27, 1971.
*815 Zarlengo, Mott & Carlin, Albert E. Zarlengo, Jr., Denver, for plaintiff in error.
George J. Duckworth, Robert D. Bradley, Denver, for defendants in error.
Not Selected for Official Publication.
ENOCH, Judge.
This case was transferred from the Supreme Court pursuant to statute.
This is a wrongful death action which arose out of a one-car accident occurring on February 6, 1968, on U. S. Highway 6 near Silver Plume, Colorado. The defendant, Glen Alcorn, appeals from an adverse verdict in the amount of $35,000 rendered against him by the jury.
Plaintiffs were the sole heirs of Elaine Erasmus, who died in the accident. Plaintiffs Joan Woody and John Erasmus were the daughter and son of the deceased. Although John Erasmus was 20 years old, he was severely mentally retarded, and was totally dependent upon his mother.
At the time of the accident, the deceased was riding as a guest in an automobile owned and operated by the defendant. Plaintiffs based their claim on exceptions to the guest statute, namely that defendant was intoxicated and that he drove his vehicle in a manner that was willfully and wantonly negligent.
The defendant and deceased were returning from a trip to Glenwood Springs. They were being followed by a vehicle driven by Maloney, an employee and a friend *816 of the defendant. Riding with Maloney was the plaintiff, John Erasmus. The defendant admitted that he and the deceased had consumed some alcohol just prior to leaving Glenwood Springs and that both were drinking while driving from Glenwood Springs. However, the defendant claims that he only consumed a small quantity of alcohol immediately after leaving Glenwood Springs, some 110 miles from the scene of the accident. The defendant stated that immediately before the accident, he and the deceased were arguing about her wanting another drink; that he told her that he would fix another drink for her as soon as they reached Georgetown, Colorado, and that he was knocked unconscious in the accident and he remembered nothing about the accident. He testified that immediately after the accident, Maloney told him that the deceased had hit him over the head with a flashlight and grabbed the wheel of the car, thereby causing the accident.
Maloney was not a witness at the trial. Although the defendant intended to call John Erasmus as a witness, the trial court refused to let him do so on the basis that John Erasmus was not a competent witness. Thus, there was no direct testimony as to the alleged flashlight incident. Defendant's efforts to corroborate the story by the testimony of third parties were prevented by the trial court on the basis of the rule against hearsay.
The defendant claims numerous errors which are summarized as follows: (I) The trial court's failure to direct a verdict in favor of the defendant at the close of the plaintiffs' case; (II) The admission and rejection of certain evidence; (III) The failure by the plaintiffs to prove the amount of damages; and (IV) The giving of an allegedly erroneous instruction.

I
We have examined the first alleged error as summarized above and conclude that the trial court was correct in its rulings. It is the well established rule that in passing upon a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the party against whom the motion is directed, and it can only be granted where the evidence when so considered shows no basis upon which a verdict in favor of such party could be sustained. Nettrour v. J. C. Penney, Inc., 146 Colo. 150, 360 P.2d 964.

II
In the second allegation of error as summarized, it is asserted that the trial court erred in rejecting and accepting certain evidence.

A
The defendant sought to corroborate his theory of how the accident happened by offering the testimony of John Erasmus and the defendant's parents. The defendant made an offer of proof by way of the testimony of John Erasmus that on the night of the accident, John Erasmus went to the home of the defendant after returning from the hospital where the defendant was a patient and gave defendant's flashlight to defendant's parents. Defendant claimed that at that time, John Erasmus told defendant's parents that the deceased had hit defendant over the head with the flashlight. The defendant also sought to cross-examine John Erasmus as he was an eyewitness to the accident. However, as stated before, the trial court did not allow John Erasmus to be called as a witness. The defendant alleges that this was error. We do not agree. The evidence showed that John Erasmus' I.Q. ranged between 50 and 80. Further, the trial court had an opportunity to personally observe John Erasmus through more than one-half of the trial. The defendant offered no evidence in opposition to the evidence supporting the conclusion that John Erasmus was not competent to testify.
Although the majority of cases in Colorado dealing with a witness' competency to testify hold that permitting such a witness to testify is not error, it is equally well established that the determination of whether *817 such witness should be allowed to testify rests largely in the trial court's discretion and its determination will not be disturbed in the absence of a clear abuse of discretion. See, Holm v. People, 72 Colo. 257, 210 P. 698; Howard v. Hester, 139 Colo. 255, 338 P.2d 106. The trial court clearly did not abuse its discretion in refusing to let John Erasmus testify. However, our holding is limited to the proceedings below and should not be construed as a prohibition against allowing John Erasmus to testify on retrial. If offered as a witness, the trial court on retrial should make a new, independent determination as to John Erasmus' competency to testify.

B
The defendant alleges as error the trial court's ruling allowing Officer Denning, the state patrolman on the scene immediately after the accident, to testify concerning statements allegedly made by Maloney. Denning testified that he had a conversation with Maloney during his investigation of the accident. This conversation took place approximately 30 minutes after the accident and out of the defendant's presence. Over defendant's objection, Denning testified that Maloney merely told him that he was following defendant's vehicle, that he observed it run off the roadway and that nothing else was said concerning the accident. Defendant contends that this was hearsay and that the court improperly applied the res gestae exception in allowing the testimony into evidence. We agree.
In Stahl v. Cooper, 117 Colo. 468, 190 P.2d 891, which involved a truck-pedestrian accident where the pedestrian later brought suit against the driver's employer, a statement by the driver of the vehicle which was made to the investigating police officer at the scene of the accident approximately 10 minutes after the accident was held not to be part of the res gestae. Gushurst v. Benham, 160 Colo. 428, 417 P. 2d 777, held the hearsay testimony of another investigating police officer not to be part of the res gestae. In its opinion, the Supreme Court relied on Stahl v. Cooper, supra, and said:
"In that case we declared that in order for a statement of this type to be a part of the res gestae it had to be in the nature of an exclamation, and not in a narrative form, spontaneous and instinctive rather than deliberate."
Stahl v. Cooper, supra, further declared that the tendency is to broaden, rather than to restrict the res gestae exception, and that the determination as to admissibility in great measure rests on the discretion of the trial judge. However, the trial court should not have allowed Officer Denning's testimony into evidence in this case because it was conclusively shown that Maloney's statement was not a "spontaneous or instinctive exclamation uttered at least somewhat contemporaneously with the event concerning which the statement was made." Gushurst v. Benham, supra, at 436, 417 P.2d at 781.

C
In the defendant's case in chief, the defendant was allowed to relate what Maloney allegedly said to him immediately after the accident, namely that the deceased hit the defendant over the head with a flashlight and grabbed the steering wheel.
In rebuttal, the plaintiffs offered the testimony of Officer Halbeisen who questioned Maloney about the accident in a doctor's office in Idaho Springs. This conversation took place in the presence of the defendant, approximately two hours after the accident. This patrolman testified that he questioned Maloney to see if he could explain why the accident occurred. Maloney allegedly replied that he didn't know what happened, that he observed the vehicle leave the road, but that he had no idea why.
The defendant contends that this testimony was also inadmissible hearsay and that as such, it was error for the trial court to have admitted it. Hearsay testimony is based on an out of court statement *818 which is being offered to show the truth of the matter asserted. See, Stone v. Union Fire Insurance Co., 106 Colo. 522, 107 P.2d 241. The record does not show for what reason Halbeisen's testimony was offered or allowed. If it were offered to show how the accident happened, then it was clearly inadmissible. However, the trial court could have allowed this testimony on either of two limited grounds: (1) as an attack on defendant's credibility by showing that Maloney made an allegedly inconsistent and contradictory statement, or (2) as circumstantial evidence of defendant's conduct relative to an adoptive admission. Under either alternative, the testimony was not hearsay.
If offered as an attack on defendant's credibility, the purpose of Halbeisen's testimony was not to show how the accident happened, but merely to show that Maloney allegedly said something inconsistent with and contradictory to defendant's version of what Maloney said:
Halbeisen's testimony could also have been admitted on the basis of an adoptive admission theory.
"If a statement is made by another person in the presence of a party to the action, containing assertions of facts which, if untrue, the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be true and his conduct is thus receivable against him as an admission of such belief. The justification for receiving such evidence is not based upon the assumption that the party has intended to express his assent and thus has adopted the statement as his own, nor upon the theory that a duty or obligation to speak has been cast upon him, but rather upon the probable state of belief to be inferred from his conduct * * *"
"Obviously, proof of the party's conduct requires proof of the statement itself to which he has thus reacted. The statement technically avoids the hearsay objection, since it is not offered as evidence of the truth of its assertions, but merely as giving meaning to the defendant's silence or evasive response."
McCormick, Evidence § 247
Officer Halbeisen's testimony as to his conversation with Maloney was admissible under either of these two theories. However, failing to instruct the jury as to the limited purpose of allowing Halbeisen's testimony constituted reversible error. Without this cautionary instruction, the jury was allowed to consider Halbeisen's testimony for the truth of the matter asserted, namely that there was no explanation for how the accident happened.

D
The defendant further alleges that the trial court erred in refusing to allow the defendant to call the plaintiff Joan Woody and defendant's parents on surrebuttal. The defendant made an offer of proof that they would testify that Maloney told them some time after the accident that the deceased hit the defendant over the head with a flashlight and thereafter grabbed the steering wheel.
As in the case of Halbeisen's testimony, the admissibility of the testimony of these witnesses depends on the purpose for which it was offered. If offered to assert the truth of the flashlight incident, such testimony would be pure hearsay and inadmissible. However, if it was offered merely to put credibility in issue, then it should have been admitted subject to a proper cautionary instruction to the jury to that effect.

E
The defendant asserts that the trial court erred in allowing the state patrolmen who investigated the accident to testify and give their opinions with regard to the speed of the defendant's automobile and defendant's intoxication since the plaintiffs allegedly failed to lay adequate foundations. We do not agree.
*819 The sufficiency of the evidence to establish the qualifications and knowledge of a law enforcement officer to entitle him to express an opinion of the speed of a motor vehicle based upon physical facts which he has observed is a question to be determined by the trial court and its decision will be upheld unless clearly erroneous. Starkey v. Bryan, 166 Colo. 43, 441 P.2d 314; Atencio v. Torres, 153 Colo. 507, 385 P.2d 659; Bridges v. Lintz, 140 Colo. 582, 346 P.2d 571.
The patrolmen had sufficient opportunity to observe the demeanor and conduct of the defendant; thus it was permissible for them to express their opinions on whether or not defendant was intoxicated. See, Jones v. Blegen, 161 Colo. 149, 420 P. 2d 404.
In the instant case, there is no basis for disturbing the decision permitting the police officers to testify.

F
The defendant claims the trial court erred in allowing three photographs showing various views of the damaged automobile into evidence. The defendant particularly objects to Exhibit F which shows the disfigured body of the deceased. It is claimed that these photographs served no useful purpose and had no probative value other than to inflame the jury.
The plaintiffs claim the photographs contained probative value. They contend that the extended damage to the automobile was evidence of a high rate of speed which was an issue in the case.
We hold that Exhibits J and H were admissible and that Exhibit F was not. The probative value of each of the three photographs was about equal. However, the immaterial and prejudicial factor contained in Exhibit F was so great that the trial judge should not have admitted it, especially since the death and manner of death were admitted and Exhibits J and H showed what plaintiffs sought to prove. Admission of Exhibit F was error in that it could have aroused the passions and prejudice of the jury and caused them to be distracted from the true issues and be unduly influenced by their emotions. See, Archina v. People, 135 Colo. 8, 307 P.2d 1083.

III
We also agree with the defendant's assertion that plaintiffs' evidence does not support a verdict of $35,000.
The question is whether the measure of damages is the amount of money needed for the care of the children after the loss of their mother or whether the damages are to be determined by the amount of money which the deceased could have been expected reasonably to contribute to their support in the future had she lived. The later rule has been adopted in Colorado and is often identified as the "net pecuniary loss rule."
It has long been the rule in Colorado that in an action for wrongful death, the damages are limited to the pecuniary loss to the parties entitled to bring the action. This rule was enunciated in the early cases of Hayes v. Williams, 17 Colo. 465, 30 P. 352, and Moffatt v. Tenney, 17 Colo. 189, 30 P. 348. In both of these cases, the wife was seeking damages as the result of the death of her husband. This damage rule has been consistently applied down through the years in wrongful death cases even though the statutory limit of maximum recovery has been changed many times. Harman v. Chase, 160 Colo. 449, 417 P.2d 784; Kogul v. Sonheim, 150 Colo. 316, 372 P.2d 731; Herbertson v. Russell, 150 Colo. 110, 371 P.2d 422; Lehrer v. Lorenzen, 124 Colo. 17, 233 P.2d 382; Pierce v. Conners, 20 Colo. 178, 37 P. 721.
The most complete statement of the net pecuniary loss rule in Colorado is found in Pierce v. Conners, supra, and this case is cited and affirmed in all of the above subsequent cases. In the Pierce case the court held:
"The true measure of compensatory relief in an action of this kind, under the act of 1877, supra, is a sum equal to the net pecuniary benefit which plaintiff *820 might reasonably have expected to receive from the deceased in case his life had not been terminated by the wrongful act, neglect or default of the defendant. Such sum will depend on a variety of circumstances and further contingencies, and will, therefore, be difficult of exact ascertainment; but the damages to be awarded in each case may be approximated by considering the age, health, condition of life, habits of industry or otherwise, ability to earn money, on the part of the deceased, including his or her disposition to aid or assist the plaintiff; not only the kinship or legal relation between the deceased and the plaintiff, but the actual relations between them as manifested by acts of pecuniary assistance rendered by the deceased to the plaintiff, and also contrary acts may be taken into consideration. But it must be borne in mind that the recovery allowable is in no sense a solatium for the grief of the living occasioned by the death of the relative or friend, however dear. It is only for the pecuniary loss resulting to the living party entitled to sue resulting from the death of the deceased that the statute affords compensation. This may seem cold and mercenary, but it is unquestionably the law."
Since the deceased's funeral expenses were stipulated, there were some admitted damages. However, the other evidence pertaining to damages is legally insufficient to support the award of $35,000. The evidence was totally void of damages to plaintiff Joan Woody who was married and no longer dependent upon her mother for support. The evidence presented to prove the damages of plaintiff John Erasmus consisted of testimony by a psychologist that it now cost $240 per month for room, board and care at an institution for the mentally retarded that John had attended on a day student basis some years prior. The plaintiffs showed that the deceased earned $300 per month, but never established how much of her income was spent on John. Joan Woody also testified that she and her husband had investigated the cost of sending John to an institution in Oklahoma. Over defendant's objection she was allowed to testify that it would cost $200 per month, plus room and board.
It is apparent that the only evidence pertaining to damages which could be the basis for such a verdict related to the cost of maintaining John in the future which had no relation to what he actually lost in terms of support which he could have reasonably anticipated in the future had his mother lived.

IV
Finally, the defendant alleges error in giving Instruction 18, which states that there is a presumption that the deceased was exercising due care for the protection of her person and the preservation of her life at the time of the accident. Inasmuch as the Colorado Jury Instructions are now available to the parties, this instruction should not be used on retrial.
The judgment is hereby reversed and remanded to the trial court for new trial consistent with the opinions expressed herein.
SILVERSTEIN, C. J., and DUFFORD, J., concur.